UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

ERIC LYNCH,

                              Plaintiff,

v.                                              6:23-cv-1454
                                                (GTS/TWD)

COUNTY OF HERKIMER, et al.,

                              Defendants.

───────────────────────────────────────

APPEARANCES:                      OF COUNSEL:

ERIC LYNCH
*Plaintiff, pro se*
18-B-0755
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Eric

Lynch ("Plaintiff") alleging Darryl Lucas, Russell Fetterman, Matthew Jacoby, the State of New

York, Herkimer County District Attorney Jeffrey S. Carpenter, and the County of Herkimer

violated his civil rights.  Dkt. No. 1.  Plaintiff, who was in the custody of New York State

Department of Corrections and Community Supervision ("DOCCS") at the Elmira Correctional

Facility at the time of filing, has not paid the filing fee for this action and seeks leave to proceed

in forma pauperis ("IFP").  Dkt. Nos. 4, 8.

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates economic need. Dkt. No. 8. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, he is granted permission to proceed IFP.[1]

## III.    BACKGROUND

Plaintiff's claims arise from events which began on November 25, 2008. Dkt. No. 1 at 8-10.[2] Plaintiff avers Defendants Jacoby and Fetterman: trespassed onto Plaintiff's property, located in Middleville, New York; opened Plaintiff's locked Ford Econoline van, located on said property; conducted a search of the van, without a warrant; and seized "plaintiff's legaly owned 30.06 rifle which was safely stored inside plaintiff's locked vehicle . . . ." *Id.* at 9.[3] Later the same day, Plaintiff reported his rifle had been stolen; Fetterman informed Plaintiff he had taken the rifle; Plaintiff requested Fetterman return the rifle; and Fetterman returned Plaintiff's rifle

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[3] Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

and wrote plaintiff tickets for failing to report a take and failing to properly fill a tag for a deer management permit.  *Id*. at 9-10.

On February 25, 2009, Plaintiff filed "a Notice of Claim . . . against the State of New York setting forth the improper procedures employed by defendant's FETTERMAN and LUCAS."  *Id*. at 10.  Thereafter, "In retaliation . . . defendant FETTERMAN commenced and engaged in a scheme to harass plaintiff and members of his family."  *Id*. at 11.

On April 29, 2009, Fetterman issued Plaintiff a ticket for making a false written statement.  *Id*. at 15.  Plaintiff has since requested "either a trial or dismissal of the charge . . . " however, as of the time of filing, the charge had not been disposed of.  *Id*.

On May 8, 2009, an unnamed New York State Department of Environmental Conservation ("DEC") "Officer called the plaintiff on his cellular phone and informed him that they had a warrant for his arrest."  *Id*. at 11.  "Plaintif was directed to meet defendant(s) FETTERMAN and LUCAS in the parking lot of the Town of Fairfield Court," and when he arrived, he "demanded to see the alleged arrest warrant."  *Id*. at 11-12.  Defendant Lucas:

> [G]ot extremely irritated and begin yelling and swearing at the plaintiff . . . grabbed plaintiff, manhandled plaintiff, and placed handcuffs on the plaintiff . . . grabbed the plaintiff by his shirt, lifted him off of the ground, and then slammed the plaintiffs body onto the hood of the Department of Environmental Conservation SUV . . . Plaintiff was then dragged to defendant FETTERMAN's SUV and thrown into the backseat by defendant LUCAS.

*Id*. at 12-13.  Plaintiff further asserted "Defendant FETTERMAN stood by watching while plaintiff was being physically assaulted by defendant LUCAS."  *Id*. at 13.  Next, Defendant Fetterman transported Plaintiff to the Town of Manheim Court where he appeared before "Justice Thompson" who "ordered the defendant(s) to release the plaintiff immediately . . . [and] never bring the plaintiff back into his court."  *Id*. at 14.

The Court takes judicial notice of an action Plaintiff commenced on November 21, 2012.

*See generally*, *Lynch v. New York* (hereinafter, "*Lynch* I"), No. 6:12-CV-1757 (DNH/DEP), 2013

WL 4425129, at *1 (N.D.N.Y. Aug. 14, 2013).  Plaintiff brought "a total of sixteen causes of

action arising from ten separate interactions with New York State Police and/or DEC officers

between November 2008 and October 2012. . . . pursuant to 42 U.S.C. § 1983 . . . ."  *Id*.  District

Judge David N. Hurd dismissed Plaintiff's complaint in its entirety.  *See id*. at *4.

## IV.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis*

complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28

U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141

F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when

the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is

frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S.

319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);

*see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual

frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly

incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual

contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)

5

(internal quotations and citation omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.   DISCUSSION

Plaintiff's complaint asserts the following causes of action: (1) an excessive force claim against Defendant Lucas (Dkt. No. 1 at 15-16); (2) a failure to intervene claim against Defendant Fetterman (Dkt. No. 1 at 17); (3) a deliberate indifference claim against Defendants Lucas and Fetterman (Dkt. No. 1 at 18); (4) an illegal search and seizure claim against Defendants Jacoby and Fetterman (Dkt. No. 1 at 19-20); (5) a Second Amendment violation claim against Defendants Jacoby and Fetterman (Dkt. No. 1 at 20); (6) a state liability claim against the State of New York (Dkt. No. 1 at 20-23); (7) a claim of Due Process violations against Defendant Carpenter (Dkt. No. 1 at 23-24); and (8) a *Monell* claim against the County of Herkimer (Dkt. No. 1 at 24-25).[4]  For the reasons explained below, all of Plaintiff's contentions fail to state a claim upon which relief may be granted; therefore, dismissal of the complaint is warranted.

### A.   *Heck v. Humphrey*

As previously stated, Plaintiff is currently in DOCCS custody.  The Court takes judicial notice of DOCCS public administrative records stating Plaintiff is incarcerated on convictions for burglary in the first degree, attempted burglary in the first degree, and criminal mischief in the second degree.[5]

---

[4] *See generally*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[5] *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on February 14, 2024); *see also*, *e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information . . . ."); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

While it is not clear in Plaintiff's complaint what relationship, if any, these convictions have to his claims in the instant matter, to be sure, civil lawsuits may not be used to collaterally attack criminal convictions. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Id*. Therefore, to the extent Plaintiff's claims could be construed as calling into question the validity of any conviction which has not been reversed, expunged, declared invalid, or called into question by a relevant authority, his claims are barred by *Heck*. *See*, *e.g.*, *Hines v. Giacona*, No. 5:18-CV-0002 (GTS/TWD), 2018 WL 4610675, at *3 (N.D.N.Y. Apr. 2, 2018) (concluding the plaintiff's § 1983 claims which "would necessarily call into question the validity of his conviction" was barred by *Heck v. Humphrey* "unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated.") (citations omitted), *report and recommendation adopted*, 2018 WL 3046513 (N.D.N.Y. June 20, 2018).

### B. Plaintiff's Claims against Defendants Lucas, Fetterman, and Jacoby, and the State of New York Are Barred Under the Doctrine of *Res Judicata*

In *Lynch* I, Plaintiff alleged "on November 25, 2008 . . . [DEC] Officers Russell F. Fetterman and Matthew Jacoby . . . used force to pry open the door of [Plaintiff's] truck and seize a firearm, all without a search warrant or probable cause." *Lynch* I, Dkt. No. 1 at 2. Plaintiff further asserted:

> [O]n May 9, 2009 . . . Officer Fetterman telephoned the Plaintiff and directed him to appear in the parking lot across the street from the

> Village Courthouse in Middleville, NY as there was purportedly a
> warrant for the Plaintiff's arrest . . . . Plaintiff met Officer Fetterman
> and one DEC Officer Darryl Lucas in the parking lot. . . . Plaintiff
> was physically assaulted . . . . Officer Fetterman then drove Plaintiff
> to the Town of Manheim Court . . . . [where] the officers could not
> produce a warrant . . . . The justice on the bench . . . then released
> Plaintiff in the absence of any charge or accusatory instruments.

*Id*. at 3.  The complaint included various claims for civil rights violations under both federal and state law, including "violations of the Fourth and Fourteenth Amendments to the United States Constitution and state tort violations of assault, battery, false arrest, unlawful search and seizure and intentional infliction of emotional distress," as well as "claims of negligent supervision of police and uniformed law enforcement officers; malicious/reckless/negligent execution of police procedures within the New York State Department of Environmental Conservation and the New York State Police."  *Id*. at 6-7.

On June 12, 2013, Defendants Fetterman, Jacoby, Lucas, and the State of New York filed a motion to dismiss the complaint for failure to state a claim.  *See Lynch* I, Dkt. No. 11.  Plaintiff filed no opposition to Defendants' motion and, following a hearing, Judge Hurd granted the Defendants' motion and dismissed the complaint in its entirety on August 14, 2013.  *Lynch* I, 2013 WL 4425129, at *1, 4.  As relevant here, Judge Hurd concluded the State of New York was immune from liability under the Eleventh Amendment and Plaintiff's § 1983 claims related to the November 25, 2008, and May 9, 2009, incidents were time barred.  *See id*. at 2 (first citing *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009) in support of the proposition that state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogated said immunity; then citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) in support of the proposition that the statute of limitations applicable to claims brought under § 1983 in New York is three years).

"The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine precludes a party from asserting a claim in subsequent litigation where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id*. at 285. "A district court may dismiss an action *sua sponte* on *res judicata* grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed." *Vance v. ACCO Brands, Corp.*, No. 6:17-CV-0957 (GTS/TWD), 2017 WL 8751936, at *5 (N.D.N.Y. Nov. 1, 2017) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)) (additional citations omitted), *report and recommendation adopted*, 2018 WL 1631312 (N.D.N.Y. Apr. 2, 2018), *aff'd*, No. 18-1258, 2018 WL 5603578 (2d Cir. Oct. 3, 2018).

In this case, *res judicata* bars Plaintiff's claims against Defendants Lucas, Fetterman, Jacoby, and the State of New York. First, *Lynch* I was adjudicated on the merits because "a dismissal for failure to state a claim operates as a final judgment on the merits . . . ." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (internal quotations and citation omitted). Furthermore, Plaintiff's prior action named the State of New York, Lucas, Fetterman, and Jacoby as Defendants. *See Lynch* I, Dkt. No. 1 at 1.

Finally, Plaintiff's claims here concerning Fetterman, Jacoby, and Lucas' alleged conduct were, or could have been, raised in *Lynch* I. *See Williams v. Perry*, 229 F.3d 1136 (2d Cir. 2000) (Summary Order) (explaining the plaintiff's "current . . . claim could have been raised in [the

prior action] if it is part of the same 'nucleus of operative fact' or involves the same factual predicate as the claims raised in" the prior action) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)).  Plaintiff's claims in both actions concerned: (1) Defendant Jacoby and Fetterman's alleged actions of entering Plaintiff's Middleville property and taking possession of a firearm from Plaintiff's vehicle on November 25, 2008, *compare* Dkt. No. 1 at 8-10 *with Lynch* I, Dkt. No. 1 at 2-3; (2) Defendant Fetterman and Lucas' alleged actions in informing Plaintiff they had a warrant for his arrest, causing Plaintiff bodily harm, and transporting Plaintiff to the Town of Manheim Court without regard to Plaintiff's injuries on May 8 or 9, 2009, *compare* Dkt. No. 1 at 11-14 *with Lynch* I, Dkt. No. 1 at 3;[6] and (3) the State of New York's alleged actions and omissions which lead to, *inter alia*, the aforementioned two incidents, *compare* Dkt. No. 1 at 20-23 *with Lynch* I, Dkt. No. 1 at 8.  Because Plaintiff's claims in both complaints are derived from the same facts, even those claims which were not raised in *Lynch* I *could have been*, therefore, the claims are barred here.  *L-Tec Electronics Corp. v. Cougar Electronic Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (holding the plaintiff's claims in a second action were "plainly barred by *res judicata*" explaining, plaintiff's "new claims are *based on different legal theories rather than different facts* and, accordingly, could have been raised in the original complaint.") (emphasis added).

In sum, *res judicata* precludes all of Plaintiff's current claims against Defendants Lucas, Fetterman, Jacoby, and the State of New York.  "When an *informa pauperis* action is *res judicata*, it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B)

---

[6] The Court notes that, in the instant action, Plaintiff states this incident occurred "on May 8th of 2009," Dkt. No. 1 at 11, while, by contrast, Plaintiff previously alleged this "incident occurred on May 9, 2009," *Lynch* I, Dkt. No. 1 at 3.  However, given the similarities between both accounts and the mere one day difference in date, the Court has no doubt both accounts refer to the same incident.

compels its dismissal." *Orr v. U.S. Air Force*, No. 6:15-CV-1132 (GTS/TWD), 2015 WL 6671559, at *5 (N.D.N.Y. Oct. 30, 2015) (internal quotations and citation omitted) (dismissing plaintiff's complaint pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that his claim was barred under the doctrine of *res judicata*). Accordingly, the Court recommends Plaintiff's first, second, third, fourth, fifth, and sixth causes of action be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[7]

### C. Plaintiff's Claim Against Defendant Carpenter [8]

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.'" *Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

---

[7] In any event, Plaintiff's claims against Defendants Lucas, Fetterman, and Jacoby, and the State of New York, arising from incidents which occurred in 2008 and 2009, are time barred by the three year statute of limitations applicable to § 1983 claims in New York. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under § . . . 1983 in New York is three years.").

[8] While it is not clear when Plaintiff was charged with making a false written statement or when he avers the Herkimer County District Attorney allegedly violated his constitutional rights, the Court takes judicial notice that Jeffrey Carpenter is the current Herkimer County District Attorney and John H. Crandall was the Herkimer County District Attorney prior to Carpenter's 2012 election. *See generally*, https://history.nycourts.gov/figure/district-attorneys-herkimer-county/ (site last visited on February 14, 2024).

Accordingly, absolute immunity includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), as well as deciding when to drop charges, *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *see also Flagler*, 663 F.3d at 547 ("the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case . . . [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused . . . ." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

Here, Plaintiff accuses the Herkimer County District Attorney ("DA") of due process violations, claiming the DA:

> [V]iolated plaintiff's right to a speedy trial . . . violated plaintiff's rights as guaranteed by the U.S. Constitution by failing to dispose of the charge of FALSE WRITTEN STATEMENT, 201.45 even after the statute of limitations had expired . . . [and] violated plaintiffs rights by allowing the open charge of FALSE WRITTEN STATEMENT, PL 201.45 to be used against plaintiff in a PRE-SENTENCING INVESTIGATION REPORT for the arrest of plaintiff on March 9th of 2017 even though he knew that the statute of limitations had expired years prior.

Dkt. No. 1 at 23-24. Plaintiff's allegations fall squarely within the scope of prosecutorial immunity. *See Phillips v. Proud*, No. 5:18-CV-0029 (LEK/ATB), 2018 WL 3195094, at * 4 (N.D.N.Y. Mar. 14, 2018) (concluding the plaintiff's claim that an ADA "did not dismiss the

charges in a timely manner, rather, he let the speedy trial clock run" did "not defeat prosecutorial immunity," irrespective of the ADA's motivation or the resulting damage), *report and recommendation adopted*, 2018 WL 3193198 (N.D.N.Y. Jun. 28, 2018); *Corley v. Wittner*, 811 F. App'x 62, 63 (2d Cir. 2020) (Summary Order) ("The district court correctly held that the state court judge and prosecutors were absolutely immune from suit as to [the plaintiff]'s speedy trial" claim) (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (additional citations omitted); *Taylor*, 640 F.2d at 452 ("the failure to drop charges . . . ha[s] been held to be prosecutorial activit[y] for which absolute immunity applies.") (citation omitted).  Therefore, Plaintiff's claim against the DA in his individual capacity is barred.

Next, under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "New York State has not consented to suit in federal court."  *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977)), *aff'd*, 311 F. App'x 474 (2d Cir. 2009).  "Further, 42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York."  *Id*. (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

"When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.'"  *D'Alessandro*, 713 F. App'x 1 at 8 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (additional citations omitted).  "Thus, if a district

attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)); *see also*, *e.g.*, *Gentry v. New York*, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (explaining, "the claims against [assistant district attorneys], in their official capacities, are effectively claims against the State of New York" and recommending dismissal of said claims), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021); *Rich v. New York*, No. 1:21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.") (citation omitted). Therefore, Plaintiff's claim against the DA in his official capacity is barred.

In sum, both prosecutorial and Eleventh Amendment immunity proscribe Plaintiff's claim against the DA. Accordingly, the Court recommends Plaintiff's seventh cause of action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See*, *e.g.*, *Gosier v. Oneida Cnty. Dist. Attorney's Office*, No. 6:23-CV-1118 (DNH/TWD), 2023 WL 6880352, at *1 (N.D.N.Y. Oct. 18, 2023) (recommending dismissal of the plaintiff's § 1983 claims against the County District Attorney's Office and District Attorneys pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A), *report and recommendation adopted*, 2023 WL 7220751 (N.D.N.Y. Nov. 2, 2023).

### D. Plaintiff's Claim Against the County of Herkimer

Plaintiff's claim against the County of Herkimer appears to arise from a charge of making a punishable false written statement, in violation of N.Y. PENAL LAW ("P.L.") § 210.45. Plaintiff asserts only the following facts with respect to the charge:

- On April 29th of 2009 defendant FETTERMAN issued the plaintiff a ticket for FALSE WRITTEN STATEMENT.

14

- For years the plaintiff has requested either a trial or dismissal of the charge of MAKING A FALSE WRITTEN STATEMENT.
- Defendant CARPENTER has continually ignored plaintiff's request for a trial or dismissal of the charge of MAKING A FALSE WRITTEN STATEMENT.
- All claims contained within[ ]this complaint fall within the Statute of Limitations due to the fact that the charge of MAKING A FALSE WRITTEN STATEMENT, CPL 210.45, remains an open charge.

Dkt. No. 1 at 15. As explained above, Plaintiff avers the DA's failure to dispose of the charge violated his due process rights and the County's failure to train the DA about "the laws and rights of an individual to a speedy trial" and "the laws and rules regarding statutes of limitation on criminal charges" violated his constitutional rights. *See id*. at 24-25.

To the extent Plaintiff's claim against the County concerns an ongoing state court criminal proceeding, this Court may not intervene. *Hicks v. Miranda* and *Younger v. Harris* "establish that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of great and immediate harm." *Peralta v. Leavitt*, 56 F. App'x 534, 535 (2d Cir. 2003) (affirming the District Court's conclusion "that, if the criminal proceedings against [the plaintiff] were still ongoing, the Complaint [brought under to 42 U.S.C. § 1983] must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.") (citing *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Younger v. Harris*, 401 U.S. 37 (1971)); *see also Singleton v. State of N.Y.*, No. 1:98-CV-0414, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998) (dismissing the plaintiff's § 1983 claim for failure to state a claim where the charges against him were still pending in state court, explaining, "[i]t is well-settled that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm.") (citations omitted); *Anderson v. Chou*, No. 1:06-CV-3563, 2006 WL 2620424, at *2 (E.D.N.Y. Sept. 13, 2006) (abstaining from reaching the plaintiff's § 1983 claim regarding an examination

in his pending state court criminal case and dismissing the complaint in its entirety).  Here, Plaintiff has failed to allege, much less clearly show, both great and immediate harm would result from this Court's failure to intervene.

Accordingly, the Court recommends Plaintiff's eighth cause of action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[9]

### E.  Opportunity to Amend

As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problems with plaintiff's causes of action are substantive such that better pleading will not cure them.  *See Cuoco*, 222 F.3d at 112.

With due regard to Plaintiff's status as a *pro se* litigant, the defects with respect to Plaintiff's claims against Defendants Lucas, Fetterman, Jacoby, the State of New York, and Carpenter are such that any amendment would be futile.  *See, e.g.*, *Orr*, 2015 WL 6671559, at *5 (recommending the plaintiff's complaint barred by *res judicata* "be dismissed with prejudice . . . ."); *Johnson v. Bieling*, No. 5:20-CV-1124 (GTS/ML), 2021 WL 1841470, at *5 (N.D.N.Y. Jan. 6, 2021) (recommending dismissal of the plaintiff's untimely complaints "with prejudice."), *report and recommendation adopted*, 2021 WL 1840591 (N.D.N.Y. May 7, 2021); *Gosier*, 2023 WL 6880352, at *4 ("[B]ecause Plaintiff's Section 1983 against [the DA's office and various DAs] are barred under the doctrines of Eleventh Amendment immunity and prosecutorial

---

[9] For the reasons explained above, to the extent Plaintiff's "*Monell*" claim against Herkimer County seeks to attack a conviction on the charge of making a false written statement, any such argument is barred by *Heck v. Humphrey*.

immunity, leave to amend would be futile.  Therefore, the Court recommends the complaint be dismissed without leave to amend.).  Accordingly, the Court recommends Plaintiff's claims against these Defendants be dismissed without leave to amend.

Moreover, while Plaintiff's apparently pending criminal case requires the Court abstain from hearing his *Monell* claim against Herkimer County, the impediment is one which may be cured; therefore, the Court recommends said claim be dismissed with leave to amend.  *See*, *e.g.*, *Anderson*, 2006 WL 2620424, at *3 (dismissing the plaintiff's claim related to his pending criminal case "without prejudice to filing a new complaint in the appropriate district court upon the conclusion of the state criminal proceedings.").  However, the Court expresses no opinion as to the timeliness or legal viability of a *Monell* claim based on the facts as stated by Plaintiff herein.  Further, Plaintiff must not reassert in any amended complaint claims that the Court has dismissed with prejudice.

## VI.    CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent it alleges claims against (1) Defendant Lucas, (2) Defendant Fetterman, (3) Defendant Jacoby, (4) Defendant State of New York, and (5) Defendant Carpenter; and it is further

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD**
Plaintiff's Complaint (Dkt. No. 1) to the extent it alleges a claim against the County of Herkimer
and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation
and Order, along with copies of the unpublished decisions cited herein in accordance with the
Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to
file written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of
the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS
WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)
(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.
§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: February 14, 2024
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[10] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by
mail, three additional days will be added to the fourteen-day period, meaning that you have
seventeen days from the date the Report-Recommendation and Order was mailed to you to serve
and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a
Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]
    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]
    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*
28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

2010 WL 5185047

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4425129
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eric LYNCH, Plaintiff,
v.
State of NEW YORK; Matthew Jacoby, individually
and as an agent of the State of New York; Darryl
Lucas, individually and as an agent of the State
of New York; Ralph Potasowits, individually
and as an agent of the State of New York;
and Russell F. Fetterman, individually and as
agents of the State of New York, Defendants.

No. 6:12–CV–1757.
|
Aug. 14, 2013.

**Attorneys and Law Firms**

Office of Brian J. Kellogg, Brian J. Kellogg, Esq., of Counsel,
Syracuse, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, The Capitol, Michael G. McCartin, Esq., Ass't
Attorney General, of Counsel, Albany, NY, for Defendants
the State of New York, Jacoby, Lucas, and Fetterman.

***MEMORANDUM–DECISION and ORDER***

DAVID N. HURD, District Judge.

**I. *INTRODUCTION***

 *1  On November 21, 2012, plaintiff Eric Lynch ("plaintiff"
or "Lynch") filed this action against defendants the State
of New York; New York Department of Environmental
Conservation ("DEC") officers Matthew Jacoby, Darryl
Lucas, and Russell Fetterman; and New York State Police
Trooper Ralph Potasowits (collectively "defendants").[1]
Lynch brings a total of sixteen causes of action arising from
ten separate interactions with New York State Police and/or
DEC officers between November 2008 and October 2012.
His federal claims—all brought pursuant to 42 U.S.C. § 1983
and grouped in the First Cause of Action in the complaint
—include alleged deprivations of: (1) equal protection; (2)
due process; (3) freedom of expression and association; (4)

freedom from unlawful seizure; and (5) freedom from cruel
and unusual punishment.[2]

[1]     In February 2013 plaintiff's attorney was
admonished for his failure to file affidavits to
certify that any of the defendants had been served
with a summons and copy of the complaint. In
March, Hon. David E. Peebles, United States
Magistrate Judge, reluctantly granted him an
extension of time to do so. The State of New
York was served in April, but plaintiff's counsel
still has not filed affidavits indicating that any
of the individual defendants have been served.
Nonetheless, Assistant Attorney General McCartin
entered an appearance on behalf of all defendants
except defendant Potasowits.

[2]     Plaintiff also asserts a negligent hiring, training,
and supervision claim in the Third Cause of
Action. The wording of this claim and the fact
that it is not grouped in the First Cause of
Action with the other federal claims suggests it
is a state claim, not a failure to supervise/train
claim pursuant to § 1983. The other state claims
include five state constitutional claims that mirror
the aforementioned federal constitutional claims,
assault and battery, negligence, false arrest and
imprisonment, prima facie tort, and intentional
infliction of emotional distress.

Defendants have filed a motion to dismiss the complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff
has not filed any opposition despite being granted an
extension of time to do so. Instead, at 8:15 a.m. on August 14,
2013—the day oral argument was scheduled on defendants'
motion—plaintiff filed an amended complaint. Oral argument
was heard at 10:30 a.m. on that date in Utica, New York.
Plaintiff's attorney acknowledged his failure to file any
opposition to the motion to dismiss. Decision was reserved.

**II. *FACTUAL BACKGROUND***
The following factual allegations, taken from the complaint,
are assumed true for purposes of the motion to dismiss.

On November 25, 2008, defendants Fetterman and Jacoby
observed a dead deer near Lynch's vehicle and determined
that the hunting tag on the doe was not properly filled out.
They then forcibly pried open the door to plaintiff's vehicle,
seized a firearm without a warrant, and proceeded to question

him without first providing *Miranda* warnings. On May 9, 2009, Lynch voluntarily met with Fetterman and Lucas after they claimed to have a warrant for his arrest. Plaintiff was handcuffed and thrown onto the hood of a DEC vehicle, causing injury to his back. However, he was quickly released by the town justice because defendants did not have a valid warrant or other proper accusatory instrument. All charges related to the November 25 incident, except for a ticket for the improperly tagged doe, were dismissed on March 10, 2010.

Between January 2010 and October 2012, unknown DEC and State Police officers repeatedly followed Lynch's vehicle, observed him and his family members for extended periods of time, made a vulgar gesture towards him, and attempted to pressure one of his neighbors into filing a criminal complaint against him. The only other incident involving one of the named defendants occurred on April 16, 2010, when Trooper Potasowits confronted Lynch at his child's school and issued him a traffic ticket for passing a school bus. This ticket was dismissed on June 15, 2010.

Plaintiff was diagnosed with post-traumatic stress disorder in October 2012. He attributes this condition to his arrest and continued harassment by defendants. He further claims that he is unable to work as a contractor due to the injuries suffered during the arrest.

## III. *DISCUSSION*

**\*2** As noted, Lynch has not filed any opposition to defendants' motion. Pursuant to Local Rule 7.1(b)(3), "where a properly filed motion is unopposed and ... the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting ... of the motion, unless good cause is shown." As explained below, defendants have met their burden to establish entitlement to dismissal of the complaint, and Lynch fails to identify good cause as to why such relief should not be granted.

### A. *Motion to Dismiss—Legal Standard*
To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(a)(2)), more than mere conclusions

are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiff's favor. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

### B. *Defendants' Motion to Dismiss*
First, defendants correctly point out that the State of New York enjoys Eleventh Amendment immunity from all claims for money damages. See *Gollomp v. Spitzer,* 568 F.3d 355, 365–66 (2d Cir.2009). This also applies to the individual defendants in their official capacities. *Id.*

Defendants next argue that most of Lynch's claims are untimely. The statute of limitations for § 1983 claims in New York is three years. *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). As Lynch filed this action on November 21, 2012, any claims arising from incidents that occurred prior to November 21, 2009, are untimely. Accordingly, all § 1983 claims related to the November 25, 2008, and May 9, 2009, incidents will be dismissed.

The remaining incidents involve unknown DEC officers who sat in a parking lot watching Lynch for thirty minutes, followed his vehicle on two occasions without pulling him over, made a vulgar gesture towards him once, briefly watched his father at a work site, and, while investigating a neighbor's complaint that Lynch was shooting a gun too close to a residence, unsuccessfully attempted to pressure another neighbor into filing criminal charges against him.

**\*3** These incidents do not support his federal constitutional claims. There is nothing in these allegations to suggest Lynch is a member of a suspect class or was treated differently than others similarly situated. Nor do these incidents involve a seizure, arrest, prosecution, incarceration, chilling of his speech, or anything more than de minimis harm. Accordingly, his equal protection, unlawful seizure, due process, cruel and

unusual punishment, and freedom of expression/association claims are wholly conclusory and fail as a matter of law.

The only other incident involves the traffic ticket issued to plaintiff by Trooper Potasowits. However, as this defendant has neither been properly served with a summons and complaint nor made an appearance in this matter, all claims against him will be dismissed. *See* Fed.R.Civ.P. 4(m).

In sum, all of the federal claims in the complaint are either barred by the Eleventh Amendment, untimely, or fail to state a claim upon which relief can be granted. Accordingly, all federal claims will be dismissed. Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over any remaining state claims is declined.

### C. Plaintiff's Amended Complaint

As noted above, plaintiff's counsel filed an amended complaint at 8:15 a.m. on August 14, 2013. However, he never obtained consent from defendants or made a motion for leave to file such an amended pleading, as required by Federal Rule of Civil Procedure 15(a)(2) and the Local Rules of the Northern District of New York.

Federal Rule of Civil Procedure 15 permits a party to amend its pleading once "as a matter of course" within twenty-one days after serving the complaint or within twenty-one days of service of an answer or a motion to dismiss. Both of these time frames have clearly lapsed. The original complaint was filed on November 21, 2012, and the pending motion to dismiss was filed on June 12, 2013. Therefore, plaintiff was required to first obtain consent from defendants or seek leave to file an amended complaint. He did neither.

Pursuant to Local Rule 7.1, a party seeking leave to file an amended complaint must make a formal motion to do so. This motion must be supported by a memorandum of law and an unsigned copy of the proposed amended pleading. Again, plaintiff did not file a motion, nor has he submitted a memorandum of law or a proposed amended complaint.

Therefore, the amended complaint will be stricken from the docket.

Further, the only difference between the original complaint and the amended complaint is the inclusion of paragraph 14(i), which alleges that an unidentified DEC officer briefly drove a DEC vehicle onto Lynch's property at 7:00 p.m. on July 5, 2013. Even if plaintiff had made a proper motion to amend, such would be denied as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."). These additional allegations, just like the others in the original complaint, do not support plaintiff's federal constitutional claims. There is nothing in these allegations to suggest plaintiff is a member of a suspect class or was treated differently than others similarly situated. Nor do these incidents involve a seizure, arrest, prosecution, incarceration, chilling of Lynch's speech, or anything more than de minimis harm.

## IV. CONCLUSION

**\*4** In light of the above, it is

ORDERED that

1. Defendants' motion to dismiss (ECF No. 11) is GRANTED in its entirety;

2. The Complaint (ECF No. 1) is DISMISSED in its entirety; and

3. The Clerk of the Court is directed to strike the Amended Complaint (ECF No. 17) from the docket, enter judgment in favor of defendants, and close the case.

IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2013 WL 4425129

---

Case 6:23-cv-01454-GTS-TWD   Document 9   Filed 02/14/24   Page 26 of 105

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

2018 WL 4610675

2018 WL 4610675
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrance Brown HINES, Plaintiff,

v.

Lisa M. GIACONA, Defendant.

5:18-cv-0002 (GTS/TWD)
|
Signed 04/02/2018

**Attorneys and Law Firms**

TERRANCE BROWN HINES, Plaintiff, pro se, 13-B-3372,
Cayuga Correctional Facility, Moravia, NY 13118.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

 **\*1** The Clerk has sent to the Court for initial review
the *pro se* complaint in this 42 U.S.C. § 1983 civil rights
action brought by Terrance Brown Hines ("Plaintiff") against
court reporter Lisa M. Giacona ("Defendant"). (Dkt. No. 1.)
Plaintiff, who has not paid the filing fee for this action, has
filed an application for leave to proceed *in forma pauperis*
("IFP Application") (Dkt. No. 6), along with the required
Inmate Authorization Form. (Dkt. No. 7.) Also before the
Court is Plaintiff's motion for appointment of counsel. (Dkt.
No. 9.)

## I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is
unable to pay" the standard fee for commencing an action.
28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's
IFP Application (Dkt. No. 6), the Court finds that Plaintiff
meets this standard. Therefore, Plaintiff's IFP Application is
granted.

## II. INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for
commencing this case *in forma pauperis*, the Court must
consider the sufficiency of the allegations set forth in the
complaint in light of 28 U.S.C. § 1915(e). Section 1915(e)
directs that when a plaintiff proceeds *in forma pauperis*, "the

court shall dismiss the case at any time if the court determines
that ... the action ... (i) is frivolous or malicious; (ii) fails to
state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from such
relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989). "An action is frivolous when either: (1) the factual
contentions are clearly baseless such as when the claims
are the product of delusion or fantasy; or (2) the claim is
based on an indisputably meritless legal theory." *Livingston
v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)
(citations and internal quotation marks omitted). Although
extreme caution should be exercised in ordering *sua sponte*
dismissal of a *pro se* complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983), the court still has a responsibility to determine that a
claim is not frivolous before permitting a plaintiff to proceed.
*See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)
(per curiam) (holding that a district court has the power to
dismiss a complaint *sua sponte* if the complaint is frivolous).

Where a *pro se* complaint fails to state a cause of action, the
court generally "should not dismiss without granting leave to
amend at least once when a liberal reading of the complaint
gives any indication that a valid claim might be stated." *Cuoco
v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and
internal quotation marks omitted). An opportunity to amend is
not required where "the problem with [the plaintiff's] causes
of action is substantive" such that "better pleading will not
cure it." *Id.* (citation omitted).

 **\*2** To survive dismissal for failure to state a claim, a
complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009). While Rule 8(a) of the Federal Rules
of Civil Procedure, which sets forth the general rules of
pleading, "does not require detailed factual allegations, ... it
demands more than an unadorned, the-defendant-harmed-me
accusation." *Id.*

Case 6:23-cv-01454-GTS-TWD   Document 9   Filed 02/14/24   Page 27 of 105

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

2018 WL 4610675

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. COMPLAINT

Plaintiff is an inmate in custody of the New York State Department of Corrections and Community Supervision and is housed at Cayuga Correctional Facility. (Dkt. No. 1 at 2. [1]) On November 7, 2014, after a bench trial in Cayuga County Supreme Court, Plaintiff was sentenced to a prison term of ten years for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. *Id.* at 5; *see also* http://nysdoccslookup. doccs.ny.gov (DIN 13-B-3372) (last visited Mar. 30, 2018).

[1]     Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

On January 15, 2015, Plaintiff received a copy of the trial transcript, which was signed and certified as being true and accurate by Defendant. (Dkt. No. 1 at 5.) Plaintiff noticed, however, that "certain testimony given at trial was clearly changed and ... omitted from the record." *Id.* (unaltered text). Generally, Plaintiff claims Defendant deliberately changed the record to secure Plaintiff's conviction and to deny him "a fair appeal process." *Id.* at 7-6. Despite various attempts to correct the trial transcript, *see id.* at 5-7, 10, 12-13, Plaintiff's

conviction was affirmed by the Appellate Division on October 9, 2015. *Id.* at 6. Plaintiff's earliest release date is June 24, 2021. *See* http://nysdoccslookup. doccs.ny.gov (DIN 13-B-3372) (last visited March 30, 2018).

According to Plaintiff, "if not for the willful and deliberate actions of Defendant, [he] would not have lost life and liberty guaranteed under[ ] the United States Constitution." *Id.* at 8. Plaintiff alleges (1) violation of the Eighth Amendment; (2) violation of the Fourteenth Amendment; and (3) denial of equal protection of civil rights. *Id.* at 16. Plaintiff seeks compensatory damages of $10,000,000. *Id.* Plaintiff also requests that Defendant forfeit her court reporting license and that she be subjected to an unspecified term of imprisonment. *Id.* For a complete statement, reference is made to the complaint.

### IV. DISCUSSION

**\*3** A civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for harm caused by other actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87. Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) ... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original).

Here, Plaintiff's § 1983 claims fall squarely within the ambit of *Heck* because a decision in his favor would necessarily call into question the validity of his conviction. Therefore, Plaintiff's § 1983 claims are barred under *Heck* unless and

2018 WL 4610675

until such time as Plaintiff's conviction is overturned or his sentence invalidated. *See Ingram v. Herrick*, 475 F. App'x 793, 794 (2d Cir. 2012) (a habeas corpus petition, not a § 1983 action, is the proper vehicle by which to seek relief from illegal confinement). This has yet to happen. *See* Decision & Order, *Hines v. Stallone*, No. 9:16-cv-1078 (TJM) (N.D.N.Y. Feb. 1, 2017), ECF. No. 11. Therefore, Plaintiff's § 1983 claims are not cognizable at this time. "Disposition of the case on *Heck* grounds, however, warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (quoting *Heck*, 512 U.S. at 487) (other citations omitted).

Accordingly, the Court recommends dismissing this action in its entirety without prejudice as barred under *Heck*.

## V. MOTION FOR APPOINTMENT OF COUNSEL

In light of the above recommendation, Plaintiff's motion for appointment of counsel (Dkt. No. 9) is denied as moot.

## VI. CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 6) is **GRANTED FOR PURPOSES OF FILING ONLY**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 9) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [2] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[2]      If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

## All Citations

Not Reported in Fed. Supp., 2018 WL 4610675

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 29 of 105

2018 WL 3046513

2018 WL 3046513
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrance Brown HINES, Plaintiff,

v.

Lisa M. GIACONA, Official Court Reporter, Defendant.

5:18-CV-0002 (GTS/TWD)

|

Signed 06/20/2018

**Attorneys and Law Firms**

TERRANCE BROWN HINES, 13-B-3372, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118, pro se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District
Judge

 **\*1** Currently before the Court, in this *pro se* civil rights
action filed by Terrance Brown Hines ("Plaintiff") against
Official Court Reporter Lisa M. Giacona ("Defendant")
asserting claims under the Eighth Amendment, Fourteenth
Amendment Due Process Clause and Fourteenth Amendment
Equal Protection Clause pursuant to 42 U.S.C. § 1983
arising from her alleged intentional falsification of his
trial transcript, are United States Magistrate Judge Thérèse
Wiley Dancks' Report-Recommendation recommending that
Plaintiff's Complaint be *sua sponte* dismissed in its entirety
without prejudice for failure to state a claim upon which
relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)
(ii), and Plaintiff's Objection thereto. (Dkt. Nos. 10, 11.) For
the reasons set forth below, the Report-Recommendation is
adopted and accepted.

**I. RELEVANT BACKGROUND**

 **A. Magistrate Judge Dancks' Report-
 Recommendation**
Generally, in her Report-Recommendation, Magistrate Judge
Dancks determined that Plaintiff's Complaint should be *sua
sponte* dismissed in its entirety without prejudice for failure
to state a claim upon which relief can be granted pursuant
to 28 U.S.C. § 1915(e)(2)(B)(ii), because Plaintiff's claims

(the success of which would necessarily call into question
the validity of his conviction for criminal sale of a controlled
substance in the third degree and criminal possession of a
controlled substance in the third degree) are barred under
*Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. No. 10, at Part
IV.)

 **B. Plaintiff's Objection to the Report-
 Recommendation**
Generally, liberally construed, Plaintiff's Objection asserts
two arguments: (1) his claims should not be dismissed
because he is not challenging his underlying conviction but
only seeking redress for Defendant's unconstitutional acts,
which distinguishes his case from *Heck*; and (2) in the
alternative, his claims should not be dismissed because the
dismissal of the claims would permit Defendant to continue to
tamper with court records and violate the constitutional rights
of other individuals. (*See generally* Dkt. No. 11.)

**II. STANDARD OF REVIEW**

When a *specific* objection is made to a portion of a
magistrate judge's report-recommendation, the Court subjects
that portion of the report-recommendation to a *de novo*
review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To
be "specific," the objection must, with particularity, "identify
[1] the portions of the proposed findings, recommendations,
or report to which it has an objection and [2] the basis for
the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing
such a *de novo* review, "[t]he judge may ... receive further
evidence...." 28 U.S.C. § 636(b)(1). However, a district court
will ordinarily refuse to consider evidentiary material that
could have been, but was not, presented to the magistrate
judge in the first instance. [2] Similarly, a district court will
ordinarily refuse to consider argument that could have been,
but was not, presented to the magistrate judge in the first
instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011
WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is
established law that a district judge will not consider new
arguments raised in objections to a magistrate judge's report
and recommendation that could have been raised before the
magistrate but were not.") (internal quotation marks and
citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311,
312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law
that a district judge will not consider new arguments raised in
objections to a magistrate judge's report and recommendation
that could have been raised before the magistrate but were
not.") (internal quotation marks omitted).

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 30 of 105

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

2018 WL 3046513

1    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*2** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd*

*without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

3    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a) (3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at \*1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at \*3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at \*4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 31 of 105

Hines v. Giacona, Not Reported in Fed. Supp. (2018)

2018 WL 3046513

Recommendation, the Court can find no clear-error in the Report-Recommendation. (Dkt. No. 10.) Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiff's Complaint is dismissed in its entirety, without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). To those reasons, the Court adds only two points.

First, the Court rejects Plaintiff's first argument in his Objection because he ignores the fact that, in order to prevail on any of the constitutional claims asserted, he would have to show that the allegedly incorrect change(s) intentionally made by Defendant to the trial transcript caused him harm, i.e., they negatively affected the outcome of his criminal prosecution and/or his appeal therefrom. [5] As a result, regardless of whether Plaintiff is seeking to change his trial transcript to lay the foundation for a successful appeal from his conviction or whether he is simply seeking $10,000,000 (and the forfeiture of Defendant's license), [6] his success in this action would necessarily call into question the validity of his conviction.

[5]    *See, e.g., Burrell v. Swartz,* 558 F. Supp. 91, 92 (S.D.N.Y. 1983) ("No constitutional ... right exists to an absolutely accurate trial transcript.... Plaintiff could state a claim on which relief may be granted insofar as the alleged errors and omissions in his transcript prejudice an appeal of his conviction.... [I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal.").

[6]    (*See* Dkt. No. 1, at Part VI [setting forth Plaintiff's requested relief].)

 **\*3** Second, the Court rejects Plaintiff's second argument in his Objection because he lacks standing to assert claims on behalf of other people (and the possibility of those claims by others do not constitute an exception to the application of *Heck* to Plaintiff).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 10) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that, pursuant to Magistrate Judge Dancks' granting of Plaintiff's *in forma pauperis* application (Dkt. No. 6), the Clerk shall provide the superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization (Dkt. No. 7), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350.00 in installments, over time pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of Plaintiff's Inmate Authorization (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED in its entirety without prejudice** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3046513

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 8751936

2017 WL 8751936
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert M. VANCE, Plaintiff,

v.

ACCO BRANDS, CORPORATION, Defendants.

6:17-CV-00957 (GTS/TWD)
|
Signed 11/01/2017

**Attorneys and Law Firms**

ROBERT M. VANCE, pro se, 3 West Street, Apt. 1, Oneonta,
New York 13820.

**ORDER AND REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** The Clerk has sent to the Court for review under
28 U.S.C. § 1915(e)(2)(B)(i)-(iii) the *pro se* complaint and
amended complaint in this action in which Plaintiff Robert
M. Vance has sued Defendant ACCO Brands, Corporation
("ACCO") for employment discrimination in violation of
the Americans with Disabilities Act of 1990, as amended
("ADA"), 42 U.S.C. § 12111, *et seq.*, based upon a hearing
impairment; breach of a collective bargaining agreement;
violation of discharge and attendance guideline agreements;
wrongful termination; defamation; and harassment. [1] (Dkt.
Nos. 1, 17.) Also before the Court is Plaintiff's application
for leave to proceed *in forma pauperis* ("IFP application"). (Dkt.
No. 2.)

[1]    Plaintiff's amended complaint is not so much a
       pleading as a list of the exhibits attached to it. (Dkt.
       No. 17.) Therefore, rather than treat the amended
       complaint as a superseding pleading, the Court
       will consider Plaintiff's amended complaint as a
       supplement to his original complaint and consider
       them as a single pleading for purposes of initial
       review.

For reasons explained below, the Court finds that the
claims alleged by Plaintiff in his complaint, as supplemented
by his amended complaint, are barred under the doctrine
of *res judicata*, and recommends that the complaint as

supplemented be *sua sponte* dismissed with prejudice on
initial review for failure to state a claim. (Dkt. Nos. 1, 17.)

**I. IFP APPLICATION**

A court may grant *in forma pauperis* status if a party
"is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's
IP application, the Court finds that he meets this standard.
Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted.

**II. LEGAL STANDARDS FOR INITIAL REVIEW**

Even when a plaintiff meets the financial criteria for *in forma
pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989). "An action is frivolous when either: (1) the factual
contentions are clearly baseless such as when the claims
are the product of delusion or fantasy; or (2) the claim is
based on an indisputably meritless legal theory." *Livingston
v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)
(citations and internal quotation marks omitted). Although
extreme caution should be exercised in ordering *sua sponte*
dismissal of a *pro se* complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983), the court still has a responsibility to determine that a
claim is not frivolous before permitting a plaintiff to proceed.
*See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)
(per curiam) (holding that a district court has the power to
dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a
complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009). While Rule 8(a) of the Federal Rules
of Civil Procedure, which sets forth the general rules of

2017 WL 8751936

pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. RELEVANT BACKGROUND

### A. Plaintiff's First ADA Lawsuit Against ACCO

On December 9, 2011, Plaintiff, represented by counsel, commenced an employment action alleging violation of the ADA entitled *Vance v. ACCO Brands USA, LLC*, No. 3:11-CV-1443 (NAM/DEP) in the Northern District of New York. ("*Vance I*"). [2] In his second amended complaint in that action, Plaintiff, who was born with a high degree of neural hearing loss and a corresponding speech impediment, alleged he began working at ACCO's Sydney, New York facility in July 2004 as a third shift picker/packer in the shipping department. (*Vance I*, Dkt. No. 47 at ¶¶ 5, 12, 16. [3] ) Plaintiff alleged that ACCO subjected him to disparate treatment and a hostile work environment because of his hearing impairment, retaliated against for complaining about such conduct, and ultimately terminated his employment in or about December 2011 in retaliation for his complaints. *Id.* at ¶¶ 3, 60-61.

[2]     Plaintiff originally named Meadwestvaco Corporation as Defendant in the action. (*See Vance I*, Dkt. No. 1.) However, according to the District Court, Meadwestvaco Corporation was acquired by ACCO, during Plaintiff's employment. *Id.*, Dkt. No. 83 at 2 n.3.

[3]     Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

According to Plaintiff, while other ACCO employees were being rotated through various tasks at the facility, he worked at the packing station, reach picking, and palletizing in the shipping department from 2004 through 2006. (*Vance I*, Dkt. No. 47 at ¶¶ 16-17.) Plaintiff claimed it was unusual for workers to do the same task for an extended period as he did. *Id.* In 2007, Plaintiff was, at his request, given the opportunity to work as a case thrower but was returned to his original task after one day allegedly because of hearing issues. *Id.* at ¶¶ 18-19. Plaintiff was thereafter trained on materials handling equipment, passed the tests for materials handling, and ultimately was given a materials handler license. *Id.* at ¶¶ 20-29. However, he was still not given the opportunity to perform different tasks or rotated into other departments. *Id.* at ¶ 31.

**\*3**  Plaintiff filed his first ADA discrimination complaint against ACCO with the Equal Opportunity Employment Opportunity Commission ("EEOC") on March 10, 2008, and a settlement agreement was reached in a mediation and signed on July 7, 2008. *Id.* at ¶¶ 40-44. Plaintiff alleged in his second amended complaint in *Vance I* that Defendant maintained the exact same course of action continuing to discriminate against him by failing to rotate him to different positions, failing to offer adequate training, and failing to comply with the terms of the mediation agreement. *Id.* at ¶¶ 50-51. In addition, Plaintiff claimed he was the victim of harassment and an escalating course of retaliation because he had filed the discrimination complaint with the EEOC, creating a hostile work environment. *Id.* at ¶¶ 50, 53. The retaliation included continuous "write-ups" for bogus alleged disciplinary violations. *Id.* at ¶ 52.

Plaintiff filed a second EEOC complaint on February 13, 2009, because Defendant had ignored the terms of the mediation agreement and the discrimination against him had intensified. *Id.* at ¶ 54. The EEOC issued a right to sue letter on September 13, 2011. *Id.* at ¶ 58. Plaintiff alleged that his employment was terminated without cause on June 21, 2013, in violation of the ACCO collective bargaining agreement, and solely in retaliation for his discrimination complaints. *Id.* at ¶ 61.

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 34 of 105

Vance v. ACCO Brands, Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 8751936

In a Memorandum-Decision and Order, filed in *Vance I* on March 31, 2015, the Hon. Norman A. Mordue, Senior U.S. District Judge, granted Defendant ACCO summary judgment. (*Vance I*, Dkt. No. 83.) The District Court specifically addressed Plaintiff's ADA violation claims, including disparate treatment, retaliation, including his allegedly retaliatory termination, and hostile work environment claims, and found the Defendant entitled to judgment as a matter of law. *Id.*

Plaintiff appealed to the Second Circuit on April 29, 2015. (*Vance I*, Dkt. No. 85.) Plaintiff's motion to vacate the Second Circuit's September 2, 2015, Order dismissing his appeal was denied on September 7, 2016. (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.)

**B. Complaint, as Supplemented By the Amended Complaint, Now Under Initial Review**

### 1. Original Complaint

The claims alleged by Plaintiff in the original complaint (Dkt. No. 1) in his new ADA employment discrimination action ("*Vance II*") now under review include, but are not be limited to:

> failure to promote, denial of participation in programs, failure to make alterations to accommodate a disability, retaliation, violation of an existing mediation agreement with EEOC, violation of company and union CBA (Collective Bargaining Agreement) on employment discharge, Hostile work environment, Wrongful Termination, failure to notify the union on discharge and waived rights for representation as a union paying member, and defamation of character bogus wrongful termination with assumption of committing future violence in the workplace.

(Dkt. No. 1 at ¶ 5.)

The factual allegations supporting Plaintiff's ADA claim, found in paragraphs 7 through 58 of his complaint in *Vance II* are virtually identical to those alleged in paragraphs 8 through 58 of his second amended complaint in support of the same ADA claim in *Vance I*. (*Vance I*, Dkt. 47 at ¶¶ 8-57; *Vance II*, Dkt. No. 1 at ¶¶ 7-58.) The major distinction between the two pleadings is Plaintiff's elaboration on the facts and circumstances surrounding the termination of his employment and alleged breach of the ACCO collective bargaining agreement in the present action. (*Vance II*, Dkt. No. 1 at ¶¶ 66-102.) In his second amended complaint in *Vance I*, Plaintiff simply alleged that his employment was terminated without cause, in violation of the ACCO collective bargaining agreement. (*Vance I*, Dkt. No. 48 at ¶ 61.) Plaintiff has also added a state law defamation claim in *Vance II*. (*Vance II*, Dkt. No. 1 at ¶¶ 5, 95.)

### 2. Amended Complaint

**\*4** On September 14, 2017, while the Court was undertaking the initial review of Plaintiff's complaint, Plaintiff filed a letter motion requesting additional time to add to the complaint. Plaintiff explained that he was waiting for the case file in his initial action to be delivered to him by his former attorney, and he would need time to review the file and add exhibits to support his claim and add to his original complaint. (Dkt. No. 7.)

The following day, Plaintiff filed a series of exhibits relating to his EEOC proceedings and an affirmation from his counsel in *Vance I* in support of a motion to recall the Second Circuit mandate dismissing the appeal and for reinstatement. (Dkt. Nos. 8, 8-1.) The Court thereafter issued text orders granting Plaintiff's letter motion (Dkt. No. 7) and subsequently giving him an extension of time to submit his amended complaint and exhibits. (Dkt. Nos. 9, 14.) Plaintiff submitted an amended complaint and exhibits on October 27, 2017, after receiving his file from *Vance I* from his former counsel. (Dkt. Nos. 17, 17-1, 17-2.)

In his amended complaint, Plaintiff describes *Vance II* as being brought pursuant to:

> Americans with Disabilities Act, 42 U.S.C. 1201 et seq., Breach of Contract with EECO (sic), CWA, CBA

Vance v. ACCO Brands, Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 8751936

(collective bargaining agreements), Violation of Discharge agreement, Violation of Attendance Guideline agreement, Hostile Environment, Retaliation, Wrongful Termination, Slander, Defamation of Character and Harassment, and pursuant to the Constitution of the United States of America, along with the New York State Human Rights Law, and other federal and state anti-discrimination laws and policies in response to the defendants' discrimination based upon a disability, union representation, and the failure to acommodate (sic) the same.

(Dkt. No. 17 at 2-3.)

Plaintiff has submitted 134 pages of exhibits with his amended complaint, including documents from his EEOC complaints; a copy of the collective bargaining agreement between Defendant and a Local of the Communications Workers of America ("CWA"); Plaintiff's employment application and hearing test; Memorandum for Mediation submitted by Defendant in *Vance I*; documentation regarding attendance guidelines; various medical reports, excuses, and other information; correspondence between CWA Local #1416 and Defendant regarding Plaintiff's treatment and grievances; communications between Plaintiff and his attorney in *Vance I*; notes from an investigation on Plaintiff by Defendants; EEOC settlement agreement; and what appears to be Plaintiff's brief to the Second Circuit on his dismissed appeal in *Vance I*.[4] (Dkt. Nos. 17-1, 17-2.)

4    The cover letter submitted to the Court by Plaintiff, indicates that the exhibits submitted by Plaintiff were among the papers in the file of his attorney in *Vance I*. (Dkt. No. 17-3.)

## IV. ANALYSIS

The doctrine of *res judicata* applies when "1) the previous action involved an adjudication on the merits; 2) the previous action involved [the same parties or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285

(2d Cir. 2000); *see also Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (under the doctrine of *res judicata*, "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose").

 **\*5** A district court may dismiss an action *sua sponte* on *res judicata* grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (citing *Carbonell v. Louisiana Dep't of Health & Human Resources*, 772 F.2d 185, 189 (5th Cir. 1985)); *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (district court may reach the issue of *res judicata sua sponte.*); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) ("Nothing ... suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a *sua sponte* dismissal under section 1915(d) [section 1915(e) as amended] prior to the service of the complaint.")

The District Court granted ACCO summary judgment dismissing *Vance I* and judgment was entered in favor of ACCO. (*Vance I*, Dkt. Nos. 83-84.) Plaintiff's appeal to the Second Circuit was dismissed for failure to perfect. (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.) "It is well-established that summary judgment is an adjudication on the merits for *res judicata* purposes." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010) (citing *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 712-15 (2d Cir. 1977)); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 n.9 (E.D.N.Y. 2010) ("Summary judgment dismissal is considered a decision on the merits for res judicata purposes."). Therefore, the Court finds that *Vance I* involved an adjudication on the merits for purposes of determining the applicability of *res judicata* to *Vance II*.

*Vance I* and *Vance II* are between the same parties, thereby satisfying the second requirement for the applicability of *res judicata*. Moreover, the claims alleged by Plaintiff in *Vance II* are based on the same transactions involving Plaintiff's employment by Defendant at issue in *Vance I*, and were raised, or could have been raised, in that first action. Plaintiff's discrimination claim against ACCO under the ADA, including that his termination was in retaliation for filing ADA complaints with the EEOC, alleged in this case was clearly raised in *Vance I*. (*Vance* I, Dkt. 47; *Vance* II at 1.) Further, Plaintiff's allegation in his second

2017 WL 8751936

amended complaint in *Vance I* that ACCO breached the collective bargaining agreement reveals that Plaintiff, who was represented by counsel, was aware of the claim when he filed the second amended complaint and could have raised the claim in that prior action. (*Vance I*, Dkt. No. 47 at ¶ 61.) The defamation claim alleged in *Vance II* is based upon transactions related to Plaintiff's employment with Defendant and also could have been raised in *Vance I*.

Based upon the foregoing, the Court finds that this action is barred its entirety under the doctrine of *res judicata* and recommends that Plaintiff's complaint (Dkt. No. 1), as supplemented by his amended complaint (Dkt. No. 17), be *sua sponte* dismissed with prejudice for failure to state a claim on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED;** and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1), as supplemented by his amended complaint (Dkt. No. 17), be *sua sponte* **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[5]   If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8751936

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vance v. Acco Brands Corporation, Not Reported in Fed. Supp. (2018)

2018 WL 1631312

2018 WL 1631312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert M. VANCE, Plaintiff,

v.

ACCO BRANDS CORPORATION; and
MeadWestVaco Corporation, Defendants.

6:17-CV-0957 (GTS/TWD)
|
Signed 04/02/2018

**Attorneys and Law Firms**

ROBERT M. VANCE, 3 West Street, Apt. 1, Oneonta, New
York 13820, pro se.

HINMAN, HOWARD & KATTELL LLP, OF COUNSEL:
ALBERT J. MILLUS, JR., ESQ., P.O. Box 5250, 80
Exchange Street, 700 Security Mutual Building, Binghamton,
New York 13902, Counsel for Defendants.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District
Judge

**\*1** Currently before the Court, in this employment civil
rights action filed *pro se* by Robert M. Vance ("Plaintiff")
against ACCO Brands Corporation and MeadWestVaco
Corporation ("Defendants"), are the following: (1) United
States Magistrate Judge Thérèse Wiley Dancks' Report-
Recommendation recommending that Plaintiff's Complaint,
as supplemented by his "Amended Complaint," be *sua sponte*
dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)
for failure to state a claim and because Plaintiff's claims
are barred by the doctrine of *res judicata*; and (2) Plaintiff's
Objection to the Report-Recommendation. (Dkt. Nos. 18, 19.)

Even when construed with the utmost of special solicitude,
Plaintiff's Objection fails to assert a specific challenge to
the Report-Recommendation. (*Compare* Dkt. No. 19 *with*
Dkt. No. 18.) As a result, the Court need review the Report-
Recommendation for only clear error.[1] Based upon a careful
review of this matter, the Court can find no clear error

in the Report-Recommendation: Magistrate Judge Dancks
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result, the
Court accepts and adopts the Report-Recommendation for the
reasons stated therein. (Dkt. No. 18.) To those reasons, the
Court would add only that, while generally *pro se* plaintiffs
must be afforded a chance to amend their complaint prior to
the dismissal of their original complaint for failure to state
a claim, such a chance need not be afforded where, as here,
the defects in the original complaint are substantive such that
amendment would not likely cure them.

[1]     When no specific challenge is made to a magistrate
judge's report-recommendation, the Court subjects
that report-recommendation to only a *clear error*
review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P.
72(b), Advisory Committee Notes: 1983 Addition;
*see also Brown v. Peters*, 95-CV-1641, 1997 WL
599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler,
J.) [collecting cases], *aff'd without opinion*, 175
F.3d 1007 (2d Cir. 1999). When performing such
a "clear error" review, "the court need only satisfy
itself that there is no clear error on the face of
the record in order to accept the recommendation."
Fed. R. Civ. P. 72(b), Advisory Committee Notes:
1983 Addition; *see also Batista v. Walker*, 94-
CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July
31, 1995) (Sotomayor, J.) ("I am permitted to adopt
those sections of [a magistrate judge's] report to
which no specific objection is made, so long as
those sections are not facially erroneous.") (internal
quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-
Recommendation (Dkt. No. 18) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1), as
supplemented by his "Amended Complaint" (Dkt. No. 17), is
*sua sponte* **DISMISSED** with prejudice for failure to state
a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1631312

Vance v. ACCO Brands, Not Reported in Fed. Rptr. (2018)

2018 WL 5603578

2018 WL 5603578
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Robert M. VANCE, Plaintiff-Appellant,

v.

ACCO BRANDS, Headquarters & Corporate
Office, Manufacturing/Office Supply,
MeadWestVaco Corporation, Defendants-Appellees.

18-1258
|
October 3, 2018

N.D. New York, 17-cv-957, Suddaby, C.J., Dancks, M.J.

**Attorneys and Law Firms**

Robert M. Vance, Oneonta, NY, pro se.

Albert John Millus, Jr., Esq., Hinman, Howard & Kattell,
LLP, Binghamton, NY, for Defendants-Appellees.

MeadWestVaco Corporation, Sidney, NY.

Present: José A. Cabranes, Robert D. Sack, Barrington D.
Parker, Circuit Judges.

**Opinion**

**\*1** Appellees move for summary affirmance. Upon due
consideration, it is hereby ORDERED that the motion is
GRANTED. *See United States v. Bonilla*, 618 F.3d 102, 107–
08 (2d Cir. 2010).

**All Citations**

Not Reported in Fed. Rptr., 2018 WL 5603578

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6671559
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Brian Scott ORR, Plaintiff,

v.

UNITED STATES AIR FORCE, Air Force Research
Laboratory; United States Department of Justice,
FBI National Security Division; and Chester John
Maciag, Air Force Special Projects Chief, Defendants.

No. 6:15–CV–1132 (GTS/TWD).
|
Signed Oct. 30, 2015.

**Attorneys and Law Firms**

Brian Scott Orr, Lompoc, CA, pro se.

### DECISION and ORDER

GLENN T. SUDDABY, Chief Judge.

**\*1** Currently before the Court, in this civil rights action filed *pro se* by Brian Scott Orr ("Plaintiff") against the above-captioned entities and individual ("Defendants"), are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report–Recommendation recommending that this action be *sua sponte* dismissed, with prejudice, for failure to state a claim upon which relief can be granted on the grounds that it is barred under the doctrine of *res judicata,* and (2) Plaintiff's one-page Objection to the Report–Recommendation. (Dkt.Nos.4, 5.)

When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1).

[1] *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [2]

[2] *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Here, liberally construed, Plaintiff's Objection asserts only three specific challenges to Magistrate Judge Dancks' Report–Recommendation: (1) that Plaintiff's claim in the current action is not identical to his claim in the prior action; (2)

Orr v. U.S. Air Force, Not Reported in F.Supp.3d (2015)
Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 40 of 105
2015 WL 6671559

that the dismissal of his first claim was not based on the merits of his claim; and (3) that the dismissal of his first claim (based on the ground of frivolousness) was not permissible, and the dismissal of his current claim (based on the doctrine of res judicata) is not permissible, because both claims are supported by medical evidence. (Dkt. No. 5.)

After carefully reviewing the relevant filings in this action, the Court can find no error in the challenged portions of the Report–Recommendation, nor any clear error in the remaining portions of the Report–Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 4.) To those reasons, the Court would add only that it has carefully reviewed Plaintiff's Complaint in the first action and his Complaint in this action, and finds them to be virtually identical. Moreover, the Court finds that the dismissal of Plaintiff's first action was indeed on the merits.

**\*2  ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 4) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED.***

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Clerk has sent Plaintiff Brian Scott Orr's pro se civil rights complaint, brought under 42 U.S.C. § 1983, together with an application to proceed in *forma pauperis* ("IFP Application") and Prisoner Authorization Form to the Court for review. [1] (Dkt. Nos. 1 and 2.)

[1]     While the Prisoner Authorization Form (Dkt. No. 2 at 3) submitted by Plaintiff differs in some respects from the Inmate Authorization Form generally used in the Northern District of New York, i.e., it does not include language specifically authorizing the facility in which he is incarcerated to send certified copies of statement of his trust fund when

requested by the Clerk, it does set forth Plaintiff's understanding of his obligation to pay the full amount of the filing fees and authorize the prison officials to "assess, collect and forward to the Court the full amount of these fees, in monthly payments based on the average of deposits to or balance in [his] prison trust account in accordance with 28 U.S.C. Section 1915." *Id.* In addition, the Certificate setting forth the sum plaintiff has on account, found at the bottom of the IFP Application used in the Northern District of New York is contained in the Prisoner Authorization Form submitted by Plaintiff. The Court finds that the IFP Application and Prisoner Authorization Form submitted by Plaintiff are adequate for a determination of Plaintiff's entitlement to proceed *in forma pauperis* solely with respect to the Court's initial review.

### I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application and Prisoner Authorization Form (Dkt. No. 2), the Court finds that he meets the standard and his IPF Application is granted solely for purposes of this initial review.

### II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should

be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*3** Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiffs] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

### III. ANALYSIS

#### A. Plaintiff's Complaint in this Action

Plaintiff has sued the United States Air Force, the United States Department of Justice, and Air Force Special Projects Chief, Chester John Maciag, in his complaint submitted for filing on September 21, 2015, and now before the Court for initial review. (Dkt. No. 1.) Plaintiff has alleged the following facts in his complaint:

> 4. THE DEPARTMENT OF DEFENSE INTELLIGENCE COMMUNITY (IC) KNOWINGLY, WITH INTENT TO KILL, USED BRIAN SCOTT ORR AS THE UNCONSENTING TEST SUBJECT OF AN ILLEGAL DIRECTED ENERGY EXPERIMENT, WHEN BRIAN ORR SURVIVED LONGER THAN CONVENIENT, ARFL–RIGB CHIEF MACIAG ORDERED ORR TO TAKE HIS OWN LIFE. MACIAG ALSO THREATENED ORR AND WORKED HARD TO DISCREDIT ORR STARTING RIGHT BEFORE THE TORTURE STARTED ON AUGUST 13, 2010. COL LAMAR PARKER AND LT COL WILLIAM GREGORY ALSO PLAYED A CONSPIRATORIAL ROLE AND WERE ACTIVELY INVOLVED IN PSYCHOLOGICAL OPERATIONS AGAINST ORR. PHYSICAL DAMAGE WAS APPLIED TO ORR NOT BY DIRECT CONTACT BUT BY TECHNOLOGICAL MEANS. REMOTE APPLICATION OF SAID DAMAGE WAS ALLEGEDLY FROM AIR FORCE/NATIONAL RECONNAISSANCE OFFICE SPY RADAR TECHNOLOGY. THE MAGNITUDE AND DURATION OF PAIN CAN ONLY BE ACCURATELY DESCRIBED AS TORTURE AND CAN ONLY BE UNDERSTOOD BY OTHER SURVIVORS OF CRIMES AGAINST HUMANITY. MEDICAL DOCUMENTATION THAT YOU WILL READ IN THE EXHIBITS STATE ORR'S

INJURIES WERE MICROWAVE RADIATION INDUCED. THE INJURIES ARE IRREVERSIBLE AND ARE SYSTEM WIDE. MOST DAMAGE IS TO ORR'S NERVOUS SYSTEM (BRIAN (sic) AND PERIPHERAL NERVES). THE INTENSE ELECTROMAGNETIC RADIATION ALSO DAMAGE ORR'S HEART AND CAUSED A MYOCARDIAL INFARCT AND WEAKENED OUTPUT. THE DAMAGE TO ORR'S ENDOCRINE SYSTEM HAS LEFT HIM INFERTILE (UNABLE TO BEAR CHILDREN). ORR LEFT AFRL ROME, N.Y. ONLY LATER TO BE STALKED AND TORMENTED BY FBI NATIONAL SECURITY DIVISION AGENTS. FAMILY MEMBERS WERE ALSO STALKED, HARASSED, AND HAD THEIR COMPUTERS HACKED WITHOUT COURT ORDER. ORR'S ORDEAL WAS DOCUMENTED IN 2012 IN INQUIRIES TO SENATE MEMBERS (FEINSTEIN), A FEINSTEIN DIRECTED INVESTIGATION OF THE AIR FORCE OSI, FBI, AND POLICE REPORTS. IN 2012 THE WEBSITE HTTP:// USGOVTATROCITIES.COM WAS PUT ONLINE TO EXPOSE THE HEINOUS CRIMES AGAINST ORR.

*4  *Id.* at ¶ 4.

Plaintiff seeks money damages for medical bills; permanent physical damage; government theft and property damage; stalking and intimidating Orr and his family; an 2011 assassination attempt in Arizona; hacking of Orr's families' home computer networks and phones without court order; economic loss for lost wages; and damages for PTSD. Plaintiff seeks monetary damages totaling $2,713,700.00. *Id.* at ¶ 5.

**B. Plaintiff's Complaint in *Orr v. U.S. Air Force, el al.,* United States District Court, C.D. Cal., No. 2:15–cv–01800**

Prior to submitting his complaint for filing in this action, Plaintiff commenced an action against the same three Defendants asserting the identical claim and seeking essentially the same damages in the United States District Court, C.D. Cal. (*See Orr v. U.S. Air Force, et al.* ("*Orr* I"), No. 2:15–cv–01800–MMM–MRW, Dkt. No. 1.) In his complaint in *Orr* I, Plaintiff alleged:

5. THE DOD INTELLIGENCE COMMUNITY (IC), KNOWINGLY WITH INTENT TO KILL, USED BRIAN SCOTT ORR AS THE UNCONSENTING TEST SUBJECT IN AN ILLEGAL TORTURE EXPERIMENT. WHEN ORR SURVIVED LONGER THAN EXPECTED, ARFL–RIGB BRANCH CHIEF MACIAG ORDERED ORR TO TAKE HIS OWN LIFE. MACIAG ALSO THREATENED ORR AND HAD CAPT BRIAN SESSLER TAKE RR INTO THE COTF TO DISTRACT ORR TO MANAGE AN ILLEGAL IMPLANT ON ORR'S IPHONE. OTHER PSY–OP PARTICIPANTS INCLUDED AIR FORCE INTEL OFFICER WILLIAM GREGORY AND COLONEL LAMAR PARKER. PHYSICAL TORTURE WAS APPLIED BY HIGH POWER RADAR AND NOT NECESSARILY CONFINED TO ROME, NY. MEDICAL DOCUMENTATION STATES ORR'S INJURIES WERE MICROWAVE RADIATION INDUCED AND IRREVERSIBLE. DAMAGE IS TO ORR'S BRAIN, NERVOUS SYSTEM, AND HE IS INFERTILE. ORR LEFT AFRL TO BE STALKED AND TORMENTED BY DOJ AGENTS. FAMILY MEMBERS WERE ALSO STALKED AND THEIR COMPUTERS

HACKED ALL WITHOUT COURT ORDER. ORR'S ORDEAL WAS DOCUMENTED IN 2012 BY SENATORIAL INQUIRIES, AFOSI INVESTIGATIONS, POLICE REPORTS, AND, OF COURSE, HTTP:// USGOVTATROCITIES.COM. EVIDENCE CAN BE FOUND AT HTTP://TINYURL.COM/ SAVEBRIANSCOTT. ANOTHER WEBSITE THAT BRIAN SCOTT IS IN PRISON [2] AS RETALIATION FOR SPEAKING OUT: HTTP:// HUMANCIVILRIGHTSFIRST.ORG.

[2]     In *Orr* I, the court took judicial notice that Plaintiff was convicted of theft and computer hacking charges related to his former employment at the Air Force base. (*Orr* I, Dkt. No. 3 at 2 n. 1.); *see also United States v. Orr,* CR–13–872 (C.D.Cal.)

*Id.* at ¶ 5.

In *Orr* I, Plaintiff sought money damages for medical bills; permanent brain and nervous system damage; government theft, property damage and vandalism; stalking Orr and his family; failed assassination attempts in Arizona and by repeated torture; hacking without court order; being forced to leave the Country after his term of imprisonment to escape persecution; interference with employment; loss of federal assistance; and damages for PTSD. *Id.* at 6. Plaintiff sought monetary damages totaling $2,713,700.00. *Id.*

### C. *Res Judicata*

*Orr* I was dismissed on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) on the grounds that the action was frivolous and failed to state a claim upon which relief could be granted. (*Orr* I, Dkt. No. 3 at 1–2.) On March 18, 2015, the Hon. Michael R. Wilner, M.J., wrote that "Plaintiff's claims are too fanciful to warrant service on any of the named defendants" and recommended dismissal. *Id.* at 2. On March 19, 2015, the Hon. Margaret M. Morrow, U.S. District Judge, ordered that Plaintiff's IFP Application be denied and that the case be dismissed. *Id.* at 2.

**\*5**  "The doctrine of *res judicata,* or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284–85 (2d Cir.2000) (internal quotation marks and citation omitted). *Res judicata* precludes a party from asserting a claim in subsequent litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.*

A district court may sua sponte raise the issue of *res judicata.* See *Rollock v. LaBarbera,* 383 F. App'x 29, 30 (2d Cir.2010) (citing *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 398 n. 4 ("[A] court is free to raise [the] defense [of *res judicata* ] *sua sponte"* )). In *Denton v. Hernandez,* 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), the Supreme Court held that, while a dismissal under § 1915(e) "does not prejudice the filing of a paid complaint making the same allegations," it "could, however, have a *res judicata* effect on frivolousness determinations for future *informa pauperis* petitions." In *Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205 (2d Cir.2002), the Second Circuit agreed with the reasoning of various circuits that had found *res judicata* applicable to subsequent actions brought *in forma pauperis. See also McRae v. Norton,* No. 12–CV–1537 (KAM), 2012 WL 1268295, at * 3, 2012 U.S. Dist. LEXIS 52494, at * 8, 2012 WL 1268295 (E.D.N.Y. April 13, 2012) [3] (finding *res judicata* applied to plaintiffs *informa pauperis* action asserting the same claims as his previous action which had been dismissed pursuant to § 1915(e)).

[3]     Copies of the unpublished decision will be provided to Plaintiff in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Copies of unpublished decisions have been deleted for Westlaw purposes.]

*Orr* I and the present action involve the same parties, and the facts alleged by Plaintiff and claims asserted in the two actions are virtually identical. Furthermore, Plaintiff seeks to bring this action *in forma pauperis.* Because *Orr* I was dismissed pursuant to § 1915(e)(2)(B) on the grounds that it was frivolous and failed to state a claim, the Court finds, based upon the *Denton* and *Cieszkowska* decisions, that this action is barred under the doctrine of *res judicata.*

"When an *informa pauperis* action is *res judicata,* it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B) compels its dismissal." *Lopez v. Jet Blue Airways,* No. 12–CV–0057 (JG), 2012 WL 213831, at * 1, 2012 U.S. Dist. LEXIS 8162, at * 2 (E.D.N.Y. Jan.24, 2012). Therefore, the Court recommends that Plaintiff's complaint be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

**ACCORDINGLY,** it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED;** and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that it is barred under the doctrine of *res judicata;* and it is further

**\*6 ORDERED,** that the Clerk send Plaintiff a copy of this Order and ReportRecommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Filed Sept. 28, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6671559

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Phillips v. Proud, Not Reported in Fed. Supp. (2018)

2018 WL 3195094

2018 WL 3195094
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Amiara PHILLIPS, Plaintiff,

v.

David PROUD, et al., Defendants.

5:18-CV-29 (LEK/ATB)
|
Signed 03/14/2018

**Attorneys and Law Firms**

AMIARA PHILLIPS, pro se.


**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** On January 9, 2018, the Clerk sent this case, together with plaintiff's application to proceed in forma pauperis ("IFP") to me for my initial review pursuant to 28 U.S.C. § 1915. (Dkt. Nos. 1, 4). On January 16, 2018, after my initial review of the complaint, I found that plaintiff failed to state a claim in many respects. However, rather than recommending dismissal at that time, I issued an Order, granting plaintiff's IFP application for purposes of filing, and giving plaintiff the opportunity to amend her complaint if she chose to do so. (Dkt. No. 5).

I afforded plaintiff forty five (45) days to submit an amended complaint and referred plaintiff to the Northern District of New York Pro Se Assistance Attorney if she wished assistance in drafting an amended complaint. (Dkt. No. 5 at 14). I also noted that if plaintiff did not submit a proposed amended complaint or request an extension of time within which to do so, I would issue a Report-Recommendation based on the original filing. (*Id.*) The deadline for plaintiff to file her proposed amended complaint or request an extension of time to do so has now passed, and the original complaint has been returned to me for further action.


**I. IFP Application**

In my January 16, 2018 Order, I found that plaintiff was financially eligible for IFP status, and granted her motion for purposes of filing. I also noted that, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).


**II. Complaint**
**\*2** For clarity, I will repeat the facts as I stated in my January 16, 2018 Order. Plaintiff alleges that on July 21, 2015, she and her boyfriend, Jonathan Cooper, left her parents' home in plaintiff's car, so that Mr. Cooper could drop Ms. Phillips off at work. (Compl. at CM/ECF p.4). [1] Plaintiff states that after Mr. Cooper dropped her off at work, he continued on to his drug treatment program at "410 Crouse." (*Id.*) Plaintiff later learned that she and Mr. Cooper were followed by the "Syracuse Police Department," pursuant to the order of the New York State Department of Parole. (*Id.*) Plaintiff states that she also learned that Mr. Cooper had been stopped, and that her car was searched by the

Phillips v. Proud, Not Reported in Fed. Supp. (2018)
Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 46 of 105
2018 WL 3195094

"SPD." [2] (*Id.*) Plaintiff alleges that the basis for the search of the car was the officer's belief that "a jar of stretch mark removal cream" that was in her car "appeared to be cocaine." Plaintiff states that defendant Officer Fura "still put it in the search warrant application," even after it was determined that the substance was not cocaine. (*Id.*) (citing "exhibit 4"). Plaintiff states that she learned that Mr. Cooper was detained, handcuffed, and transported back to her parents' house "that was being occupied by NYS Parole, US Marshalls [sic], Special Investigation Division (Narcotics), gang violence task force, and Onondaga County Sheriffs [sic] Department" as the result of a "multiagency [sic] impact detail or G.I.V.E. detail." (*Id.*)

[1]    Plaintiff has filed a form-complaint for cases brought pursuant to 42 U.S.C. § 1983. However, she has added typewritten pages that are unnumbered. The court will cite to the pages of the complaint as assigned by the court's electronic filing system (CM/ECF).

[2]    In her complaint, plaintiff refers to "exhibits." However, there are no exhibits attached to the complaint. (Dkt. No. 1). It appears that plaintiff could be citing to exhibits that are attached to her father's complaint in 5:16-CV-1140. (Dkt. No. 1-1 in 16-CV-1140) (Exhibits 1-4).

Plaintiff states that she left work because she received numerous telephone calls from friends and family informing her that her parents' home was being "raided." Plaintiff claims that when she arrived at her parents' home, there were multiple police cars and officers "occupying" the home, and she was not allowed to enter, so she had to stand across the street with approximately thirty other spectators for "over" six hours while the officers obtained a search warrant for her parents' home. Plaintiff states that during that time, she was informed by a "John Doe" officer that she was not going to be arrested. Plaintiff states that when the officers were finished searching the home, and they were escorting the occupants of the home to the "transport van," the John Doe officer told plaintiff that she could "go say bye to [her] family," but as she was walking toward her family, the John Doe officer grabbed her from behind and arrested her too. (*Id.*)

Plaintiff claims that when they arrived at the Onondaga County Justice Center, defendant Proud told her that if she gave him incriminating information about her family, she would not be arrested. Plaintiff told defendant Proud that she did not know anything. Later, defendant Proud stated that

heroin was found in the police escort van, and if no one "owned up to it," they would all be charged. Plaintiff states that she was then "entered into the system and ultimately spent the night in jail." (Compl. at 5). Plaintiff states that eventually, "all the charges" were dismissed because then-Assistant District Attorney Michael Ferrante did not "want to proceed to the suppression hearing because he knew he would be unsuccessful." (*Id.*) Plaintiff states that instead of "closing" the case in a "timely" manner, defendant Ferrante "chose to let the speedy trial clock run out in its entirety." Plaintiff claims that during "this time," defendant Ferrante caused plaintiff's family "extreme duress," and plaintiff was forced to defer medical school for an entire year. She had to inform "Student Affairs" at Upstate Medical University, and University officials later saw a "humiliating" article that was written about the incident. (*Id.*)

Plaintiff claims that, during that time, she had to struggle to make ends meet until the case was finally dismissed because she could not be hired "until [she] passed a background check." Plaintiff states that this was the most difficult and embarrassing time in her life.

**\*3** The complaint contains three causes of action: (1) violation of plaintiff's Fourth Amendment rights to be free from "unreasonable stops, searches, and seizures;" (2) violation of plaintiff's Fifth and Fourteenth Amendment rights when "defendants" intentionally planted and manufactured evidence "to ... violate plaintiff's due process and equal protection ... rights;" and (3) violation of plaintiff's Sixth Amendment right to be free from malicious prosecution and from manipulation of the law to "pressure and intimidate the plaintiff." [3] (Compl. at 6). Plaintiff seeks substantial monetary relief. (Compl. at 7).

[3]    The court notes that plaintiff's three causes of action are virtually identical to the three causes of action asserted by Jonathan Cooper in 5:18-CV-28. Plaintiff Cooper's third cause of action contains a sentence stating that defendants intentionally prosecuted the plaintiff for crimes that "he" did not commit. However it is clear that plaintiff erased the "s" in front of "she," which appears in Ms. Phillips's complaint. Amiara Phillips's causes of action are also substantially similar to those in her father's action, 5:16-CV-1140.

### III. Syracuse Police Department

Phillips v. Proud, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 47 of 105

2018 WL 3195094

### A. Legal Standards

Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (dismissing claim against the police department); *Umhey v. County of Orange*, 957 F. Supp. 525, 530–31 (S.D.N.Y. 1997) (dismissing case against the County Board of Ethics). Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id. See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action) ).

### B. Application

Plaintiff named many of the same defendants as are named in *Clifton Phillips, Sr. v. Proud*, 5:16-CV-1140, and all the same defendants which are named in *Cooper v. Proud*, 5:18-CV-28, including the Syracuse Police Department.[4] As I stated in my Order and Report Recommendation in 16-CV-1140, the Syracuse Police Department may not be sued under any circumstances under section 1983. Naming the City of Syracuse is sufficient, and plaintiff has named the City of Syracuse as a defendant. Plaintiff does not need to, and may not, sue the Police "Department." Thus, the court will recommend dismissal with prejudice as against the "Syracuse Police Department."

[4]    Plaintiff sues one "John Doe," the individual officer who arrested her at her parents' home.

In addition, in my January 16, 2018 Order, I stated that if plaintiff wished to state a claim for municipal liability against defendant City of Syracuse, she must make the proper allegations. Notwithstanding the liberality with which pro se complaints are treated,[5] plaintiff made no allegations in her original complaint that could be "liberally" interpreted as alleging municipal liability.[6] Because plaintiff has failed to file an amended complaint to correct the deficiencies of her original complaint, as directed by this court, I must recommend dismissal as against the City of Syracuse.

[5]    *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

[6]    A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, ––– U.S. ––––, 131 S. Ct. 447, 452 (2010) ), (Rep.-Rec.), *adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

## IV. Prosecutorial Immunity

### A. Legal Standards

**\*4** Prosecutors are afforded absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant

Phillips v. Proud, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 48 of 105

2018 WL 3195094

to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). Absolute immunity has not been extended to situations in which the prosecutor gives legal advice to the police. *Burns v. Reed*, 500 U.S. 478, 492-93 (1991) (citations omitted). *See Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (denying absolute immunity when precise actions of the prosecutor were unknown). In these situations, the prosecutor would be entitled only to qualified immunity.

### B. Application

Plaintiff names former Assistant District Attorney Michael Ferrante. Plaintiff claims that "all" the charges were dismissed because defendant Ferrante did not want to proceed to a suppression hearing because he knew he would lose. In addition, plaintiff claims that defendant Ferrante did not dismiss the charges in a timely manner, rather, he let the speedy trial clock run. These are all actions which relate to the criminal prosecution itself, and therefore would not defeat prosecutorial immunity, regardless of defendant Ferrante's motivation or the resulting damage to plaintiff's reputation. Thus, in this case, plaintiff has not stated a claim against defendant Ferrante, even though the court allowed a claim against defendant Ferrante to proceed in 11-CV-1140, for reasons stated in my Order and Report-Recommendation in that case. This court must, therefore, recommend dismissal with prejudice as to defendant Ferrante.

### V. **Personal Involvement**

#### A. Legal Standards

Personal involvement is required for the assessment of damages in a section 1983 action, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

### B. Application

Plaintiff sued several of the defendants that were named in 16-CV-1140. However, plaintiff mentions only defendants Proud, Ferrante, [7] and Fura [8] by name in the fact section of her complaint. Defendant Fura allegedly lied in the application to search plaintiff's parents' home. Plaintiff does not allege that the home belonged to her or that defendant Fura was involved in the search of her car. None of the other defendants, except defendant Proud, are alleged to have had any interaction with plaintiff, and plaintiff makes no allegations in her complaint against defendants Braun, Staub, or Rigby. [9]

[7]     As discussed above, the court is already recommending dismissal with prejudice as against defendant Ferrante.

[8]     Although plaintiff alleges that defendant Fura lied on the search warrant application, it is not clear whether he was personally involved in any alleged constitutional violation against plaintiff. It does not appear that defendant Fura was involved in the search of plaintiff's car.

[9]     Not only does plaintiff fail to make any claims against defendant Rigby, but she has listed the defendant incorrectly. (Compl. at 2). Defendant Rigby is a Senior Parole Officer, not a Police Officer as plaintiff states in her list of defendants. Defendant Rigby is not employed by the City of Syracuse. *See* 5:16-CV-1140. In 5:16-CV-1140, Defendant Rigby is listed as a Senior Parole Officer and is represented by the Attorney General of the State of New York. It appears that defendant Rigby was the senior parole office supervising plaintiff's father, Clifton Phillips.

 **\*5** In my January 16, 2018 Order, I advised plaintiff that she could not list a variety of defendants without stating how each of them violated her constitutional rights. I gave plaintiff an opportunity to amend her complaint to specify how **named officers** violated **her** constitutional rights, not the rights of any other person. The court notes that, based on the exhibits that plaintiff's father filed in his case, defendants Braun and Staub may have been involved in the search of plaintiff's car. However, as stated above these exhibits are not attached to this complaint, and plaintiff declined to attach them even after this court gave her the opportunity to do so.

Phillips v. Proud, Not Reported in Fed. Supp. (2018)

2018 WL 3195094

Because plaintiff has failed to amend her complaint as directed, and failed to attach exhibits that she refers to in this complaint, this court must recommend dismissal as to defendants Fura, Braun, Staub, and Rigby in the absence of any allegations that would establish their personal involvement in a violation of this plaintiff's constitutional rights.

## VI. Causes of Action

### A. First Cause of Action

Plaintiff's first cause of action alleges that the defendants violated her right to be free from unreasonable stops, searches, and seizures. Read liberally, plaintiff may state a claim for illegal search of her car [10] and false arrest by a John Doe defendant and/or defendant Proud, who plaintiff alleges threatened her with arrest at the police station and may have had her arrested, along with the other people in the van, for the heroin that was found in the transport van when no one would admit possessing it.

[10]     Plaintiff is reminded, as discussed in footnote 17 below, that she has referred to exhibits indicating that Mr. Cooper consented to the search in question. Hence, it is not clear the basis for plaintiff's suggestion that the search of her car was illegal.

Plaintiff was not present at the time of the stop of Mr. Cooper and search of plaintiff's car in conjunction with that stop. Plaintiff's boyfriend was driving the vehicle, and plaintiff states that she was "dropped off" at work prior to the stop/search occurring. Because plaintiff was not present at the time of the incident, and she had relinquished control of the car, she has no standing to assert a general Fourth Amendment interest in the car when she allowed Mr. Cooper to use it. See *Levy v. Kick*, No. 3:06-CV-390, 2007 WL 2492036, at *5 (D. Conn. Aug. 30, 2007). Thus, plaintiff Phillips may not assert a Fourth Amendment claim relative to the search of her car against any of the defendants, and such claim may be dismissed with prejudice.

Plaintiff's claims of false arrest against "John Doe" and defendant Proud are personal to her and may proceed. At this time, plaintiff's claim of false arrest outside of her home may proceed against "John Doe," and her arrest at the Police Station may proceed as against defendant Proud. However, the Marshal cannot serve "John Doe" defendants. If she wishes the case to proceed as against the officer who

"arrested" plaintiff at her home, she must attempt to identify the "John Doe" so the complaint may also be served upon him. When the complaint is served against defendant Proud, and a defense attorney has appeared, the plaintiff may engage in discovery to determine the identity of the other officer who was allegedly involved in plaintiff's arrest. [11]

[11]     By allowing these claims to go forward, this court is not making any finding regarding the merits of such claims and whether the claims would survive a properly supported motion to dismiss or for summary judgment.

### B. Second Cause of Action

Plaintiff's second cause of action alleges that her Fifth and Fourteenth Amendment rights were violated when "the defendants" intentionally "planted and manufactured evidence" to violate plaintiff's due process and equal protection rights. Plaintiff does not explain why she is making this claim or why she believes that evidence was planted or manufactured. [12] To the extent that plaintiff is asserting that the drugs in the transport van were "planted," and this resulted in her prosecution, these facts may be related to a malicious prosecution claim against defendant Proud, which is discussed below.

[12]     Plaintiff has clearly copied the causes of action listed in 5:16-CV-1140, but has failed to substantiate these allegations with any facts that relate to this plaintiff. (Dkt. No. 1 in 16-CV-1140). Hence, it is impossible to determine what "manufactured" evidence Ms. Phillips is referring to.

**\*6** The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. *Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir. 1997). Thus, in order to state an equal protection violation, plaintiff would have to allege that she was treated differently than other specific individuals [13] who were similarly situated. Plaintiff has not done so in this case, and the court will recommend dismissing any Equal Protection claim.

[13]     Once again, in order to state a claim, plaintiff would have to specify how she was treated differently than other specific individuals. She may not simply make the conclusory statement that defendants treated her differently.

Phillips v. Proud, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 50 of 105

2018 WL 3195094

## C. Third Cause of Action

Finally, plaintiff's third cause of action alleges malicious prosecution. Although plaintiff claims that the charges were ultimately "dismissed," one of the elements of malicious prosecution is that the defendant acted with a lack of probable cause. *Cornelio v. State of Conn.*, 708 F. App'x 41, 42-43 (2d Cir. 2018) (citing *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[P]robable cause is a complete defense to a constitutional claim of malicious prosecution.") ).

As I stated in my January 16, 2018 Order, it is unclear what charges were brought against this plaintiff, and upon what plaintiff bases her claim of malicious prosecution. Plaintiff cannot make the claim against defendant Ferrante because he has absolute immunity. Plaintiff seems to be referring to the prosecution for the heroin found in the transport van in which she, her father, Mr. Cooper, and other individuals were all riding. [14] I gave plaintiff the opportunity to specify against which defendant she is bringing the claim of malicious prosecution and to what charges she is referring. Plaintiff did not amend her complaint or clarify those facts. Thus, this court will recommend dismissal of plaintiff's malicious prosecution claim.

[14]    Plaintiff has not specified whether she believes that the heroin in the van was "planted" or "manufactured." She ignored the opportunity provided by this court to amend her allegations to specify which defendant violated her constitutional rights and how that defendant violated those rights. In addition, plaintiff cannot assert the rights of other individuals. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 40 (2d Cir. 2015) (normally, litigants are barred from asserting the rights or legal interests of others in order to obtain relief from injury to themselves) (citation omitted).

## VII. Opportunity to Amend

### A. Legal Standards

Generally, before the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

As discussed above, certain of plaintiff's claims–against the Syracuse Police Department and defendant Ferrante, as well as any claims relating to the search of plaintiff's vehicle–are futile and should be dismissed with prejudice. The court recommends allowing plaintiff's false arrest claims to go forward against defendant Proud and, the John Doe defendant, if he can be identified and timely served.

**\*7** Based on my analysis in January of 2018, I afforded plaintiff the opportunity to amend before I recommended dismissal of her other claims, which were not adequately pled in her original complaint. Plaintiff has neither amended her complaint, nor has she attached exhibits to which she refers throughout her complaint. Plaintiff has already been given an opportunity to correct the deficiencies in her original complaint. Hence, I am recommending dismissal with respect to plaintiff's remaining claims. If, in objections to this recommendation, the pro se plaintiff shows reasonable cause for not following this court's direction to file an amended complaint to address the deficiencies in her original pleading, the District Court may decide to allow plaintiff one more attempt to file the referenced exhibits and amend the complaint with respect to these other defendants/causes of action. Otherwise, this court recommends that the remaining claims should be dismissed with prejudice.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as to defendant Syracuse Police Department and defendant Ferrante, and it is

**RECOMMENDED**, that any Fourth Amendment claim relating to the search of plaintiff's vehicle be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that the plaintiff's complaint be **DISMISSED** with respect to defendants City of Syracuse, Braun, Staub, and Rigby, and it is

**RECOMMENDED**, that plaintiff's claim of malicious prosecution as against defendant Proud, be **DISMISSED**, and it is

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 51 of 105
Phillips v. Proud, Not Reported in Fed. Supp. (2018)
2018 WL 3195094

**RECOMMENDED**, that the case proceed as to plaintiff's claims of false arrest against defendant Proud and the John Doe defendant, if he can be identified and timely served, and it is

**ORDERED**, that the issuance of summons and service of the summons and complaint be **STAYED** until the District Judge's order regarding this Report-Recommendation, and it is

**RECOMMENDED**, that after Judge Kahn issues his order regarding this Order and Report-Recommendation, the case be referred to me for further proceedings, including the ordering of service on the appropriate defendant(s).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3195094

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Phillips v. Proud, Not Reported in Fed. Supp. (2018)

2018 WL 3193198

2018 WL 3193198
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Amiara PHILLIPS, Plaintiff,
v.
David PROUD, et al., Defendants.

5:18-CV-0029 (LEK/ATB)
|
Signed 06/28/2018

**Attorneys and Law Firms**

Amiara Phillips, Syracuse, NY, pro se.

**ORDER**

Lawrence E. Kahn, U.S. District Judge

## I. INTRODUCTION

*1 This matter comes before the Court following a Report-Recommendation filed on March 14, 2018, by the Honorable Andrew T. Baxter, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 7 ("Report-Recommendation").

## II. LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A

[district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b). Otherwise, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

## III. DISCUSSION

No objections were filed in the allotted time period. Docket. Thus, the Court has reviewed the Report-Recommendation for clear error and has found none.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 7) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with prejudice** as to defendants Syracuse Police Department and Ferrante; it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice** as to defendants City of Syracuse, Braun, Fura, Staub, and Rigby; and it is further

**ORDERED**, that Plaintiff's Fourth Amendment claim relating to the search of Plaintiff's vehicle is **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's claim of malicious prosecution is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the case proceeds as to Plaintiff's claims of false arrest against Proud and the John Doe defendant, if he can be identified and timely served; and it is further

**ORDERED,** that this case be referred to Judge Baxter for further proceedings, including the ordering of service on the appropriate defendant(s); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

*2 **IT IS SO ORDERED.**

2018 WL 3193198

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3193198

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01454-GTS-TWD   Document 9   Filed 02/14/24   Page 54 of 105

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

 **\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

**II. BACKGROUND**

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]    The court must interpret *pro se* complaints to
       raise the strongest arguments they suggest. *Soto v.
       Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
       *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
       1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id.* at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id.* at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id.*) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]    "A copy of a written instrument that is an exhibit
       to a pleading is a part of the pleading for all
       purposes." Fed. R. Civ. P. 10(c); *Cortec Indus.,
       Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
       1991) ("the complaint is deemed to include any
       written instrument attached to it as an exhibit or
       any statements or documents incorporated in it by
       reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id.*)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 55 of 105

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id.*)

[3]  Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

**\*2**  Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id.*) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id.*)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id.* at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id.*)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id.*) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id.*) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id.* at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of New York; $5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id.* at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

**III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS***

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

[4]  Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http:// pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 56 of 105

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

*3 Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

[5]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

*4 In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 57 of 105

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

[6]    The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

**\*5**  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

[7]    Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

## C. Claims Against Defendants Sharp and Soares

### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity

"when she acts as an 'advocate.' " *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolutely immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

[8]
The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**\*7** For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

#### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at \*3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y.

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9]    Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10]   Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8**  As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

Case 6:23-cv-01454-GTS-TWD   Document 9   Filed 02/14/24   Page 61 of 105

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

**\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]    Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 62 of 105

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]    As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11** **ACCORDINGLY**, it is

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3037709

---

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 64 of 105

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3032691

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1] When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda* violation against
Defendant McCrindle in his individual capacity; and it is
further

 **\*2** **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

2021 WL 3032691

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3032691

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,

v.

State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

## ORDER

ANALISA TORRES, District Judge:

 **\*1** This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passamenti, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

## BACKGROUND [1]

[1]     Unless otherwise stated, the following facts are
taken from the complaint and assumed, for
purposes of this motion, to be true. *ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
2007).

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

on this call, Plaintiff believes "it was more likely that it was [ ] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.,* ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained— but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a

warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

[2]      The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.,* 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 68 of 105

what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power —to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 69 of 105

Rich v. New York, Not Reported in Fed. Supp. (2022)
2022 WL 992885

63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal.[3]

[3]    Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 70 of 105

## IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities" [4] arising *inter alia* under § 1983, § 1985, and § 1986, [5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

[4]    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

[5]    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent

infliction of emotional distress) against the DA Defendants.

### A. Absolute Immunity

**\*6**   The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at \*4 (2d Cir. Mar. 9, 2022).

2022 WL 992885

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him.[6]

[6]    Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

*7 Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity —from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable

cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

## 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity.

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 72 of 105

Rich v. New York, Not Reported in Fed. Supp. (2022)
2022 WL 992885

*Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

[7]    As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

**B. Time Bar**

**\*8**  The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

**1. Federal Claims**

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4, 2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g.*, *Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at *2 n.3 (S.D.N.Y. Sept. 2, 2021). [8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

[8]    The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at *4 (S.D.N. Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at *4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021. [9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 73 of 105

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

9    Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

10    Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure

to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

## V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

[11] As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

### A. Time Bar

#### 1. Section 1983 Claims

**\*11** Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at \*4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrado's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

[12]    As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

### B. Claim Against the City [13]

[13]    Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

 **\*12**  The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more,

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing

the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation

Rich v. New York, Not Reported in Fed. Supp. (2022)
2022 WL 992885

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 77 of 105

omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022,** Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2022 WL 992885

---

2023 WL 6880352
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

ONEIDA COUNTY DISTRICT
ATTORNEY'S OFFICE, et al., Defendants.

6:23-cv-01118 (DNH/TWD)
|
Signed October 18, 2023

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 24067, Oneida County Correctional Facility, 6075 Judd Road, Oriskany, NY 13424.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 against the Oneida County District Attorney's Office and District Attorneys Scott D. McNamara, Grant Garramone, and Todd Carville (together, "Defendants").[1] (Dkt. No. 1.) Plaintiff, who is presently confined at the Oneida County Correctional Facility, seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 4.)

[1]     The Court takes judicial notice Scott D. McNamara, Esq., is the Oneida County District Attorney; Grant Garramone, Esq., is the Chief Assistant District Attorney; and Todd Carville, Esq., is the Executive Administrative Assistant District Attorney. For ease of reference, the Court refers to the individual Defendants collectively as the "District Attorneys" throughout the decision.

## I. IFP APPLICATION[2]

[2]     On September 5, 2023, Plaintiff's first IFP application was denied and this action was administratively closed. (Dkt. No. 3.) The case was reopened on September 18, 2023, upon receipt of the required filing. (Dkt. Nos. 4, 5, and 6.)

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010).[3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[3]     Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of Plaintiff's IFP application, the Court finds he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. (Dkt. No. 5.) Accordingly, the Court grants Plaintiff's IFP application.[4] (Dkt. No. 4.)

[4]     Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

## II. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the

court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

[5]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**\*2** Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c) (2006).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995)) (other citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

### B. Summary of Complaint
Utilizing a form civil rights complaint, Plaintiff alleges Defendants violated his Fourteenth Amendment right by using "deliberately fabricated evidence" to "build a case" and "frame" him for second degree criminal possession of a weapon and "other" charges. (Dkt. No. 1 at 5-7, 9.) Plaintiff claims the District Attorneys "continued prosecuting [him] despite the fact they knew [he] was innocent." *Id.* at 9. They also "worked with" and "pressured" Utica Police Department officers and investigators to use "extremely aggressive interview techniques when questioning witnesses, thus generating a false statement and false evidence against [him]." *Id.* Defendants "knew or should have known" the "investigative techniques" were "so coercive and abusive" it "would yield false information, misconduct, and fabricated evidence." *Id.*

**\*3** As relief, Plaintiff seeks monetary relief from all Defendants in the amount of $550,000 and "dismissal" of "charges filed against him" including the second degree criminal possession of a weapon charge. *Id.* at 4, 11. He also asks, "for a full investigation into police misconduct at Utica Police Department." *Id.* at 4.

### III. ANALYSIS
Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also*

*Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted).

**A. Oneida County District Attorney's Office**

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). Eleventh Amendment immunity extends to local governments and to a district attorney's office exercising its prosecutorial functions. *See, e.g.*, *Altman v. Nassau Cty. Dist. Attorney's Off.*, No. 22-CV-0987, 2022 WL 767654, at *2 (E.D.N.Y. Mar. 14, 2022) ("Defendant Nassau County District Attorney's Office ... is immune from suit."); *Baskerville v. Richmond Cty.*, No. 19-CV-2 (AMD), 2019 WL 2162595, at *2 (E.D.N.Y. May 16, 2019) (holding the "plaintiff's claims against the Office of the Richmond County District Attorney concern[ed] its prosecution of the plaintiff" and thus that "the plaintiff's claims [were] barred by the Eleventh Amendment"); *White v. Vance*, No. 10-CV-6142 (NRB), 2011 WL 2565476, at *4 (S.D.N.Y. June 21, 2011) ("[B]ecause plaintiff asserts claims for monetary relief, any claims against the [New York County District Attorney's] Office are also barred by the Eleventh Amendment.").

Accordingly, the Court recommends Plaintiff's Section 1983 claim against the Oneida County District Attorney's Office be dismissed.

**B. District Attorneys**

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, involves the

exercise of discretion. *See Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011). This includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), and whether and when to drop charges. *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)).

**\*4** "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). Absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (cleaned up). Immunity even extends to the falsification of evidence and the coercion of witnesses," *Taylor*, 640 F.2d at 452, "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Here, Plaintiff's Section 1983 claim against the District Attorneys for "fabricated evidence" emanates from their alleged conduct in prosecuting Plaintiff for second degree criminal possession of a weapon and "other" charges. (Dkt. No. 1 at 9-10.) Therefore, they are entitled to prosecutorial immunity. *Simon*, 727 F.3d at 171; *see, e.g.*, *Matthews v. Cty. of Cayuga*, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at *3 (N.D.N.Y. June 8, 2018) (dismissing claims against prosecutor on initial review because of prosecutorial immunity).

Moreover, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity,

represents the State not the county.' " *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich v. New York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment), *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Therefore, the Court recommends Plaintiff's Section 1983 claims against the District Attorneys be dismissed.

## IV. LEAVE TO AMEND

Ordinarily, a court "should not dismiss" a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, because Plaintiff's Section 1983 against Defendants are barred under the doctrines of Eleventh Amendment immunity and prosecutorial immunity, leave to amend would be futile. Therefore, the Court recommends the complaint be dismissed without leave to amend.

## V. CONCLUSION

*5  Accordingly, it is hereby,

**ORDERED** that Plaintiff's IFP application (Dkt. No. 4) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6]  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[6]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2023 WL 6880352

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Oneida County District Attorney's Office, Slip Copy (2023)

2023 WL 7220751

2023 WL 7220751
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

ONEIDA COUNTY DISTRICT
ATTORNEY'S OFFICE et al., Defendants.

6:23-CV-1118
|
Signed November 2, 2023

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 24067, Oneida County Correctional Facility, 6075 Judd Road, Oriskany, NY 13424.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1** On September 1, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff") filed this 42 U.S.C. § 1983 action alleging, *inter alia*, that defendants have framed him for certain state-law crimes. Dkt. No. 1. Plaintiff also sought leave to proceed *in forma pauperis* ("IFP Application").[1] Dkt. Nos. 4, 5.

[1]     Shortly after this case was opened, it was administratively closed because plaintiff's IFP Application was incomplete. Dkt. No. 3. After plaintiff sent in the appropriate documents, Dkt. Nos. 4, 5, this action was reopened, Dkt. No. 6, and then referred to the assigned Magistrate Judge for initial consideration.

On October 18, 2023, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed without leave to amend. Dkt. No. 8. As Judge Dancks explained, all of the named defendants —the Oneida County District Attorney's Office, the District Attorney, and several Assistant District Attorneys—were shielded by various immunity principles. *Id.* And because the facts of plaintiff's complaint involved events integrally related to the prosecutorial phase of plaintiff's state-law criminal

proceeding, Judge Dancks concluded that leave to amend would be futile. *Id.*

Plaintiff has filed objections. Dkt. No. 9. There, plaintiff concedes that official-capacity claims against these defendants might be barred, but argues that he should still be able to pursue individual-capacity claims against some or all of the named defendants for the alleged violations of his rights. *Id.*

Upon *de novo* review of plaintiff's objections, the R&R is accepted and will be adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C). The distinction between official- and individual-capacity claims can be confusing. But the Supreme Court has repeatedly held that the scope of prosecutorial immunity from even individual-capacity claims is incredibly broad, reaching exactly the kinds of improper acts alleged by plaintiff in his pleading. *See, e.g.*, *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011). Instead of permitting a damages remedy against a prosecutor (even in their so-called "individual capacity"), courts have "pointed to other methods, such as criminal and professional sanctions, to deter and redress wrongdoing." *Anilao v. Spota*, 27 F.4th 855, 863 n.3 (2d Cir. 2022).[2]

[2]     In his objection, plaintiff offers to lower the amount of his money damages request and/or indicates that he would be satisfied with some form of equitable relief ("I will just settle for it all to be taken off my record completely[.]"). Dkt. No. 9. But even that kind of a § 1983 claim would be subject to dismissal under abstention principles because it would require the Court to intervene in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED without leave to amend.

 **\*2**  IT IS SO ORDERED.

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 83 of 105

2023 WL 7220751

**All Citations**

Slip Copy, 2023 WL 7220751

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 84 of 105

1998 WL 438530
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

John SINGLETON, Plaintiff,

v.

STATE of New York; City of New York; Criminal
Court of the City of New York, Its Judges, Its
Attorneys, Its Referees, Its Officers, Its Agents and
Its Employees; The People of the State of New York;
District Attorney Robert M. Morganthau; Assistant
District Attorney Maurice Mathis; Investigator
Nicholas Vessio; City of New York Department of
Corrections; Does I through X, inclusive, and Roe
Corporations I through X, inclusive, Defendants.

No. 98 CIV. 0414(LAP).
|
July 31, 1998.

MEMORANDUM AND ORDER

PRESKA, D.J.

 **\*1** Plaintiff, John Singleton, brings this action *pro se* under
42 U.S.C. § 1983 alleging that defendants have violated his
Constitutional rights by falsely arresting him and maliciously
prosecuting him. Plaintiff seeks monetary damages in the
amount of $2 million and injunctive relief. Defendants move
to dismiss the complaint under Rule 12(b)(6) of the Federal
Rules of Civil Procedure on the grounds that the instant
complaint is barred by res judicata and collateral estoppel, [1]
and further, that the complaint fails to state a claim upon
which relief can be granted.

[1]    The Court will not address the collateral estoppel
       or res judicata grounds for dismissal because
       the previous case upon which defendants base
       their argument, *Sierra, et al., v. United States of
       America,* et al., 97 Civ. 9329(LAK), has been
       reopened under a different docket No., 97 Civ.
       8244(RWS). The Court notes that although plaintiff
       was a party to the original class action suit, he is
       not named as a party in the newly reopened case.

BACKGROUND

As the result of an investigation by the New York City
Department of Investigation, in conjunction with the New
York County District Attorney and the New York State
Attorney General, plaintiff was arrested and suspended
without pay—along with numerous other city employees
most of whom, including plaintiff, are employees of the
Department of Corrections—for income tax evasion. [2]
Plaintiff alleges that defendants violated his Constitutional
rights by having him "falsely arrested with [a] bogus felony
complaint" and that he "is the victim of prosecutorial fraud."
Plaintiff also states that he was "arrested without a warrant or
[his] Miranda rights."

[2]    Plaintiff is charged in Criminal Court of the City
       of New York with violations of Penal Law §
       175.35—Offering a False Instrument for Filing
       in the First Degree (Class E Felony) and Tax
       Law § 1801(a)—Failure to File a return or report;
       supply information (Class A Misdemeanor). *See*
       Defendant's Motion to Dismiss, at 3; Amended
       Complaint, at 5.

In response to defendants' motion, plaintiff filed an
"Amended Complaint" which contains essentially the same
allegations as the original complaint but names different
defendants and reduces its demand for damages. [3]

[3]    Plaintiff filed his original complaint on January
       2, 1998. Defendant moved to dismiss the
       complaint on March 9, 1998. Plaintiff filed
       the instant amended complaint on March 20,
       1998 which replaced original defendants Deputy
       Chief Investigator Phil Alba, Department of
       Corrections Director Richard Fillapazza, Inspector
       General Michael Caruso, and Commissioner
       Michael Jacobson with District Attorney Robert M.
       Morganthau, Assistant District Attorney Maurice
       Mathis, and Investigator Nicholas Vessio. The
       amended complaint also demands $2 million
       damages rather than $5 million as originally
       demanded.

DISCUSSION

"In considering *Rule 12* motions to dismiss, the Court must accept the facts appearing on the face of the amended complaint as true, and consider them along with such reasonable inferences as may be drawn in complainant's favor." *Detko v. Blimpies Restaurant,* 924 F.Supp. 555, 556 (S.D.N.Y.1996). *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994) (citation omitted). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Ryder Energy Distribution Corp. v. Merril Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980).

A *Rule 12(b)(6)* motion can only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *see Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994) (same); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (same), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994); *Ricciuti v. New York City Transit. Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (same).

Moreover, as a *pro se* litigant, plaintiff is entitled to significant liberality in how his pleadings are construed and pleadings such as plaintiff's are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *see Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989). Nevertheless, for the following reasons, defendants' motion to dismiss the complaint is granted.

I. *The Eleventh Amendment Bars the Claims Against New York State and The City of New York Criminal Court*

**\*2** Initially, the claim against the State of New York must be dismissed because the Eleventh Amendment bars from federal court all *§ 1983* suits for legal or equitable relief brought by citizens against unconsenting states and agencies of such states. *Alabama v.. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see also Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (reaffirming *Edelman, § 1983* does not override the immunity granted to states under the Eleventh Amendment); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir.1977) (New York is an unconsenting state). New York has not waived its constitutional protection

under the Eleventh Amendment by consenting to suit by this plaintiff in this case. *See, e.g., McAllan v. Malatzky,* No. 97 Civ. 8291(JGK), 1998 WL 24369, at \*4 (S.D.N.Y. Jan.22, 1998) (dismissing *section 1983* claim against state of New York and its agencies).

Likewise, as an agency of the State of New York, the New York City Criminal Court is immune from suit under the Eleventh Amendment. *See Casaburro v. Giuliani,* 986 F.Supp. 176, 182 (S.D.N.Y.1997) (New York City Criminal Court is immune from suit under the Eleventh Amendment). Furthermore, the claim against the Court must be dismissed because *section 1983* provides that an action may only be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." *42 U.S.C. § 1983.* A court is not a "person" within the meaning of *§ 1983. Zuckerman v. Appellate Division, Second Dep't, Supreme Court,* 421 F.2d 625, 626 (2d Cir.1970); *Mathis v. Clerk of First Dep't, Appellate Div.,* 631 F.Supp. 232 (S.D.N.Y.1986).

II. *Plaintiff Failed to Allege Exceptional Circumstances Required for District Court to Intervene in a State Proceeding*

Plaintiff's allegations concerning his 1997 indictment and his request for injunctive relief must be also be dismissed because the charges against plaintiff are still pending in state court. It is well-settled that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm. *Younger v. Harris,* 401 U.S. 37 (1971); *see also Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). As plaintiff has failed to make the requisite showing of extraordinary circumstances as set forth in *Younger,* the complaint must be dismissed.

III. *Plaintiff's Claim of False Arrest and Malicious Prosecution is not Cognizable Under Section 1983*

Plaintiff cannot pursue a civil rights claim based on false arrest and malicious prosecution while criminal charges are still pending against him in State Court. *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994) ("[A] *§ 1983* cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); *Cameron v. Fogarty,* 806 F.2d 380, 386–88 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *see also Dukes v. New York,* 743 F.Supp. 1037, 1040–41 (S.D.N.Y.1990). Because plaintiff has not alleged

that the state court proceedings have terminated in his favor—indeed, they appear to be ongoing—his false arrest, false imprisonment and malicious prosecution claims must be dismissed.

## IV. *Plaintiff Has Failed to Allege Personal Involvement by Defendants*

**\*3**  Plaintiff has failed to allege specific facts to show how each defendant he names is responsible for the violations of federal law he alleges. As a prerequisite to a damage award under 42 U.S.C. § 1983, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation, *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991), or that he or she had actual or constructive notice of the deprivation. Liability for damages in a § 1983 action may not be based on *respondeat superior* or vicarious liability doctrines. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Furthermore, even if plaintiff were to allege personal involvement on the part of District Attorney Morganthau or Assistant District Attorney Mathis, all claims against these defendants must still be dismissed because prosecutors are immune from civil suits for acts committed within the scope of their official duties where the challenged activities are not investigative in nature, but rather are "intimately associated with the judicial phase of the criminal process...." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Dory v. Ryan,* 25 F.3d 81 (2d Cir.1994). In the instant case, plaintiff's only claim against these defendants is simply that they brought charges against plaintiff. This conduct is clearly "intimately associated with the judicial phase of the criminal process" and is thus entitled to absolute prosecutorial immunity. *Imbler,* 424 U.S. at 430; *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1148 (2d Cir.1995) ("[A]bsolute immunity extends to those acts, whether in or out of the courtroom, 'which occur in the course of the prosecutor's role as an advocate for the State" ') (citations omitted).

Finally, there being no allegations in the complaint (other than in the caption) as to any of the fictitious defendants, the complaint is dismissed as to Does I through X and Roe Corporations I through X on the ground that the complaint fails to state a claim as to which relief may be granted.

## CONCLUSION

Defendants' motion to dismiss is granted in its entirety. The Clerk of Court is directed to enter judgment dismissing the complaint and closing the case.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 438530

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 2620424

2006 WL 2620424
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Alex ANDERSON, Plaintiff,

v.

Dr. Kimberly CHOU; individually and in her official
capacity as Medical Doctor for Bellevue Hospital
Center; Attorney Jerrold Berman, individually and in
his official capacity as Attorney at Law; Robert M.
Morgenthau, individually and in his official capacity as
District Attorney of Manhattan County; Ten Unknown
District Attorneys, all in their individual and official
capacity as District Attorneys for Manhattan County;
Dr. Ankur Saraiya, individually and in his official
capacity as Psychiatrist; Dr. Nancy Nichols-Goldstein,
individually and in her official capacity as Psychologist;
Dr. Roy Lubit, individually and in his official capacity
as Psychiatrist; Abraham B. Strassfeid, individually and
in his official capacity as Attorney at Law; Unknown
Doctor John Doe, individually and in his official
capacity as Medical Doctor for Bellevue Hospital
Center; Richard Rifkin, individually and in his official
capacity as Deputy Attorney General; Unknown Court
Stenographer, Court Part 4; Criminal Court for the
State of New York; Manhattan County, Defendants.

No. 06-CV-3563 (BMC)(LB).
|
Sept. 13, 2006.

**Attorneys and Law Firms**

Alex Anderson, Brooklyn, NY, pro se.

MEMORANDUM AND ORDER

COGAN, United States District Judge:

 *1 Plaintiff, proceeding *pro se,* brings this action pursuant
to 42 U.S.C. § 1983 against various physicians, psychiatrists
and New York County District Attorneys seeking damages for
alleged due process violations during his state court criminal
proceedings, and inadequate medical care at Bellevue
Hospital. The Court grants plaintiff's request to proceed in

*forma pauperis* pursuant to 28 U.S.C. § 1915, but dismisses
the action for the following reasons.

BACKGROUND

Although the precise allegations in plaintiff's complaint
are unclear, the Court understands plaintiff to be raising
two claims. First, plaintiff claims that his ongoing criminal
prosecution in New York County violates his due process
rights. Briefly, plaintiff was arrested on December 16, 2005,
and ordered to undergo a psychiatric examination because
of an alleged history of psychiatric illness. Complaint at ¶¶
1-5. Plaintiff claims that he should not be subject to the
examination because he has been "previously found sane" by
a jury that determined that "he is the world's first and only
telepathic theatrical entertainer," and that he has been engaged
to the performer Mariah Carey since March, 2005. *Id.* at ¶¶
35-36. There have been numerous delays, adjournments, and
motions regarding plaintiff's examination, *id.* at ¶¶ 23-48, and
the case is still pending. *Id.* at ¶ 49. Plaintiff seeks this Court's
oversight of and intercession in his criminal prosecution in
state court.

Plaintiff also claims that the medical treatment he received
at Bellevue Hospital for a hand injury violated his Eighth
Amendment rights. *Id.* at p. 17-18. Specifically, plaintiff
alleges that beginning on January 10, 2006, he received
treatment for the third finger of his right hand. *Id.* at p. 18.
Plaintiff has had multiple visits with defendant physicians,
and defendant Chou determined on June 6, 2006 that
plaintiff's injury did not require surgery, discharged plaintiff
to occupational therapy for a splint, and directed plaintiff to
return to the hard clinic in three months. *Id.* Plaintiff continues
to believe that surgery is necessary.

DISCUSSION

A. Standard of Review
The Court construes plaintiff's complaint liberally,
particularly because it alleges civil rights violations. *Haines
v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652
(1972) (*per curiam* ); *McEachin v. McGuinnis,* 357 F.3d
197 (2d Cir.2004). Nonetheless, under 28 U.S.C. § 1915(e)
(2)(B), a district court shall dismiss an *in forma pauperis*
action where it is satisfied that the action is "(i) frivolous
or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." An action is "frivolous" when
either: (1) " 'the factual contentions are clearly baseless,' such

as when allegations are the product of delusion or fantasy," or (2) "the claim is 'based on an indisputably meritless legal theory.' " *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal citations omitted).

**\*2** Upon review of plaintiff's complaint, the Court must abstain from reaching plaintiff's claim regarding the psychiatric examination in his pending state court criminal case, and finds that plaintiff's allegation of inadequate medical care fails to state a claim on which relief can be granted.

### B. Abstention

Plaintiff first seeks this Court's intervention in a criminal case presently pending in state court. It is well-settled that federal courts cannot intervene in ongoing criminal proceedings, except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm. *Younger v. Harris,* 401 U.S. 37 (1971); *see also Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Although the holding in *Younger* itself was limited to state criminal trials, it has subsequently been extended to cover certain civil proceedings. As applied in our Circuit, "Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d 65, 75 (2d Cir.2003). When *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter. *Colorado Riv. Water Conserv. Dist. v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002).

Here, plaintiff states that a pretrial hearing was held in Supreme Court, New York County, on June 16, 2006, complaint at ¶ 47, and that an adjournment of four weeks was granted at that time. *Id.* at ¶ 49. It appears from this Court's review that plaintiff's claim is still pending in that Court. In addition, plaintiff has raised his concern about the psychiatric examination on several occasions in the state proceeding, and there is no indication that plaintiff will not have an adequate opportunity there for review of those claims. *See* Complaint at ¶¶ 4, 8, 17, 48-49. As a result, this Court must abstain from hearing the instant complaint. Plaintiff's constitutional claims may be raised in the state proceeding, and federal intervention at his insistence is improper.

### C. Medical Care

Plaintiff next argues that he has received inadequate medical care for a hand injury that he believes requires surgery. At the outset, the Court notes that it is unclear whether plaintiff was a prisoner during the time he received treatment at Bellevue Hospital, but the standard is identical whether plaintiff was a prisoner or a pre-trial detainee. *Cuoco v. Moritsugo,* 222 F.3d 99, 106 (2d Cir.2000) (the Second Circuit has "often applied the Eighth Amendment deliberate indifference test to pretrial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment"). In order to establish a constitutional claim of inadequate medical care, plaintiff must show that the medical condition was objectively serious and that the defendants subjectively acted with deliberate indifference to his medical needs. *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003); *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). It is well-established that "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703 (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)); *accord McKenna v. Wright,* No. 01 Civ. 6571, 2002 WL 338375, at \*7 (S.D.N.Y. Mar.4, 2002). Indeed, "disagreements over medications, diagnostic techniques (e.g., the need for x-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Sonds v. St. Barnabas Hosp. Corp. Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) (citing *Estelle,* 429 U.S. at 107); *accord Harrison v. Barkley,* 219 F.3d 132, 139 (2d Cir.2000).

**\*3** Plaintiff's injury to the "third finger of the right hand" appears to be minor. Complaint at p. 18. Moreover, he does not allege that he was deprived of medical treatment, but only that he is dissatisfied with the course of the treatment that defendant physicians prescribed. Such disagreement cannot support a constitutional claim. Thus, plaintiff's complaint fails to state a claim of deliberate indifference to serious medical needs on which relief can be granted, and must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

### CONCLUSION

2006 WL 2620424

Accordingly, the Court dismisses plaintiff's complaint in its entirety. Plaintiff's claim related to the pending criminal case is dismissed without prejudice to filing a new complaint in the appropriate district court upon the conclusion of the state criminal proceedings. *Younger,* 401 U.S. at 43; *but cf. Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (a 42 U.S.C. § 1983 claim implicating the validity of the plaintiff's underlying conviction or sentence is barred unless the underlying conviction is invalidated). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any

appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 269 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2620424

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1841470

2021 WL 1841470
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Marsheem JOHNSON, Plaintiff,

v.

D. BIELING, Onondaga County Sheriff's Officer;
S. Mollica, Onondaga County Sheriff's Officer;
J.M. Young, Sgt.; August Nordon, Public Defender;
Burnettii, Onondaga County Supreme Court Judge;
Celie, Onondaga County Drug Court Judge; and
Cliffton Cardan, Public Defender, Defendants.

5:20-CV-1124 (GTS/ML)
|
Signed 01/06/2021

**Attorneys and Law Firms**

MARSHEEM JOHNSON, Plaintiff, Pro Se, Collins
Correctional Facility, Post Office Box 340, Collins, New York
14034.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

 **\*1** The Clerk has sent this *pro se* complaint (Dkt. No.
1) together with an amended application to proceed *in
forma pauperis* (Dkt. No. 5) filed by Marsheem Johnson
("Plaintiff") to the Court for review. For the reasons
discussed below, I grant Plaintiff's amended *in forma pauperis*
application (Dkt. No. 5) and recommend that Plaintiff's
Complaint be dismissed in part with leave to amend, and in
part without leave to amend.

**II. BACKGROUND**

On July 2, 2020, Plaintiff commenced a *pro se* habeas corpus
action in the Northern District of New York, No. 9:20-
CV-0836 (MAD) ("*Johnson I*"), which is currently pending.
(*Johsnon I*, Dkt. No. 1.)

On September 17, 2020, Plaintiff commenced this action
(*Johnson II*) by the filing of a verified Complaint. (Dkt. No.
1.) The Complaint asserts that it is "amending [Plaintiff's]
complaint to docket # 9:20-CV-0836." (Dkt. No. 1 at 2.)

However, construed as liberally [1] as possible, the Complaint
alleges that Plaintiff's civil rights were violated by the
following seven Defendants: (1) D. Bieling, Onondaga
County Sheriff's Officer; (2) S. Mollica, Onondaga County
Sheriff's Officer; (3) J.M. Young, Sgt.; (4) August
Nordon, Public Defender; (5) Burnettii, Onondaga County
Supreme Court Judge; [2] (6) Celie, Onondaga County Drug
Court Judge; [3] and (7) Clifton Cardan, Public Defender
(collectively "Defendants"). (*See generally* Dkt. No. 1.)

[1]     The court must interpret *pro se* complaints to
        raise the strongest arguments they suggest. *Soto v.
        Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
        *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
        1994)).

[2]     The Court notes that Plaintiff likely intended
        to assert claims against retired New York State
        Supreme Court Justice Brunetti. However, based
        on the recommendation *infra* and at this juncture,
        without additional information from Plaintiff, the
        Court declines to *sua sponte* amend the caption
        and will refer to Defendant Burnettii, as alleged by
        Plaintiff.

[3]     The Court notes that Plaintiff likely intended to
        assert claims against Syracuse City Court Judge
        Cecile. However, based on the recommendation
        *infra* and at this juncture, without additional
        information from Plaintiff, the Court declines to
        *sua sponte* amend the caption and will refer to
        Defendant Celie, as alleged by Plaintiff.

More specifically, the Complaint alleges that on June 2, 2016,
Plaintiff exited the 7-Eleven on North Salina Street and was
walking down the street, when Defendant Bieling "jumped
out of his patrol car with his taser in hand" and ordered
Plaintiff to get on his knees and put his hands on his head.
(Dkt. No. 1 at 6.) Plaintiff alleges that Defendant Mollica
"flew through the parking lot of N. Salina and Cour[t] St ...
jumped out of his unmarked car and placed" handcuffs on
Plaintiff and did not read Plaintiff any *Miranda* warnings. (*Id.*
at 13.) Plaintiff alleges that he was not provided with a search
warrant for his person but that Defendant Bieling pat searched
him, took everything out of his pockets, and Defendant
Mollica "yanked the back of [Plaintiff's] pants." (*Id.* at
6-7, 13.) Plaintiff alleges that Defendant Bieling "unbuckled
[Plaintiff's] pants in public and (sexually assaulted [Plaintiff])

Case 6:23-cv-01454-GTS-TWD   Document 9   Filed 02/14/24   Page 91 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

by grabbing [Plaintiff] by the groin area." (*Id*. at 7.) Plaintiff alleges that he was then placed in the back of a patrol vehicle and booked at the Onondaga County Justice Center. (*Id*.)

**\*2** Plaintiff alleges that Defendant Young "signed off on the police report without a search warrant." (*Id*. at 7-8.)

Plaintiff alleges that Defendant Nordon was assigned to represent him with respect to the pending criminal charges. (*Id*. at 8.) Plaintiff further alleges that Defendant Nordon did not inform Plaintiff of his options, never explained the weight of the drugs, the quantity of the drugs, whether the drugs were real or fake, did not produce a test report on the drugs, and did not consider Plaintiff's defense that he was illegally searched. (*Id*.) Plaintiff alleges that Defendant Nordon waived Plaintiff's right to a preliminary hearing without Plaintiff's consent, entered a plea agreement on Plaintiff's behalf in drug court, and Plaintiff "never [saw] or heard from [Defendant Nordon] again." (*Id*.)

Plaintiff alleges that in July 2016, after being held at the Onondaga County Jail for fifty-five days, he filed a motion pursuant to N.Y. Crim. Proc. Law § 190.80, before Defendant Burnettii. (*Id*. at 8.) Plaintiff alleges that in July 2016, he was brought before Defendant Burnettii, who informed him that Defendant Nordon had passed away and denied Plaintiff's motion pursuant to N.Y. Crim. Proc. Law § 190.80. (*Id*. at 8-9.)

Plaintiff alleges that in September 2016, Defendant Cardan was assigned to represent him with respect to the pending criminal charges. (*Id*. at 9.) Plaintiff alleges that Defendant Cardan "never took the time to look into [Plaintiff's] case," failed to provide Plaintiff with documents establishing the weight, quantity, or quality of the drug he allegedly possessed, and did not pursue Plaintiff's defenses that he was being improperly held without an indictment, was illegally searched, and was sexually assaulted by officers. (*Id*.) Moreover, Plaintiff alleges that Defendant Cardan failed to advise him of his options and "forced" Plaintiff into signing the drug court agreement. (*Id*.)

Plaintiff alleges that on September 19, 2017, Defendant Celie sentenced him to a term of three years-incarceration and two years post-release supervision. (*Id*. at 10.) Plaintiff alleges that Defendant Celie knew that the Onondaga County Sheriff's Department officers "grabbed [Plaintiff] by the [ ]groin area[,] ... there was never a [ ]search warrant[ ] produce[d], ... [Plaintiff] was never read [his] [ ]Miranda

rights[ ] while being [ ]handcuffed[ ], ... there was no [ ]indictment[ ], ... there was never a [ ]test result[ ] produce[d] [ ]showing or stating[ ] the [ ]weight[ ] ... of the drug [Plaintiff] was allege[d to have] possessed." (*Id*. at 10.)

Based on these factual allegations, Plaintiff asserts the following seven causes of action: (1) a claim that Defendants violated his right to due process pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (2) a claim that Defendants violated his right to equal protection, pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (3) a claim of false arrest, pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (4) a claim of excessive force, pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (5) a claim of failure to intervene, pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (6) a claim that Defendants illegally searched and seized him, in violation of the Fourth Amendment and 42 U.S.C. § 1983; and (7) a claim of malicious prosecution, pursuant to the Fourth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 6.)

**\*3** As relief, Plaintiff seeks $805,000.00 in damages (based on a demand for $115,000.00 in damages per claim). (Dkt. No. 1 at 13.)

## III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010).[4] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

4    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://

Case 6:23-cv-01454-GTS-TWD   Document 9   Filed 02/14/24   Page 92 of 105
Johnson v. Bieling, Not Reported in Fed. Supp. (2021)
2021 WL 1841470

pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 5), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 6.)

Accordingly, Plaintiff's amended application to proceed with this action IFP is granted. (Dkt. No. 5.)

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

[5]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curium) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

**\*4** Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

### A. Claims Against Defendants Burnettii and Celie

Plaintiff's Complaint appears to assert claims against Defendants Burnettii and Celie in their individual and official capacities, for actions they allegedly took in their positions as Onondaga County Supreme Court Judge and Onondaga County Drug Court, respectively. (Dkt. No. 1 at 3.)

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."). This immunity applies to state court judges who are sued in federal court. *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

**\*5** Plaintiff's allegations regarding Defendants Burnettii and Celie appear to relate to actions they took as judges, while presiding over Plaintiff's state criminal proceedings. (*See generally* Dkt. No. 1.) The Complaint is devoid of facts plausibly suggesting that Defendants Burnettii or Celie took any action as an individual, and therefore also fails to allege that either acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendants Burnettii and Celie be dismissed in their entirety based on the doctrine of absolute judicial immunity.

### B. Claims Against Defendants Nordon and Cardan

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)). "However, it is well-established that

court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." *Rodriguez*, 116 F.3d at 65-66 (citing *Housand v. Heiman*, 594 F.2d 923, 924-25 (2d Cir. 1979) (per curiam); *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (public defenders do not act under color of state law)). Moreover, "[p]rivate attorneys are generally not 'state actors' for purposes of § 1983." *O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020) (citing *Rodriguez*, 116 F.3d at 65-66); *see Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (holding that the defendant, "as a private attorney, was not a state actor; that he was licensed by the state to practice law does not render him a state actor."); *Caldwell v. Barrier*, 19-CV-1516, 2020 WL 918717, at *3 (N.D.N.Y. Feb. 26, 2020) (Hummel, M.J.) ("Private attorneys, whether court appointed or privately retained, are not liable under 42 U.S.C. § 1983."), *report and recommendation adopted by* 2020 WL 1904034 (N.D.N.Y. Apr. 17, 2020 (Sannes, J.).

The allegations in the Complaint fail to allege facts plausibly alleging that Defendants Nordon and Cardan were state actors subject to liability pursuant to 42 U.S.C. § 1983.

As a result, I recommend dismissal of the claims against Defendants Nordon [6] and Cardan with prejudice.

[6]    The Complaint alleges that Defendant Nordon died during his representation of Plaintiff sometime on or before July 2016. (Dkt. No. 1 at 8-9.) To the extent that Plaintiff has any viable claims pursuant to 42 U.S.C. § 1983 against Defendant Nordon, those claims would likely survive Defendant Nordon's death. *See Graham v. Henderson*, 224 F.R.D. 59, 62-63 (2004) (holding that "[b]ecause no court has held that § 1983 retaliation claims do not survive the death of the defendant in New York and further, because no court held that only § 1983 'personal injury' claims survive the death of the defendant, plaintiff's § 1983 retaliation claim survives the death of defendants."). However, a motion pursuant to Fed. R. Civ. P. 25(a) must be filed to substitute the proper party on behalf of Defendant Nordon's estate.

### C. Claims Against Defendants Bieling, Mollica, and Young

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 94 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

After carefully considering the matter, I recommend that Plaintiff's claims for violation of his right to due process, violation of the equal protection clause, and malicious prosecution against Defendants Bieling, Mollica, and Young in their individual capacities be dismissed without prejudice as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because they seek to impugn the validity of his underlying state court criminal proceeding. In addition, I recommend that Plaintiff's claims for false arrest, excessive force, failure to intervene, and unlawful search and seizure against Defendants Bieling, Mollica, and Young in their individual capacities be dismissed because they are untimely. Moreover, I recommend that Plaintiff's claims against Defendants Bieling, Mollica, and Young in their official capacities be dismissed with prejudice.

### 1. Individual Capacity Claims

**\*6**  "A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 486-87. In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999).

In contrast, the Supreme Court held in *Wallace v. Kato*, 549 U.S. 384 (2007), that the statute of limitations for a false arrest claim begins to accrue "when legal process was initiated." *Wallace*, 549 U.S. at 390. "Following *Wallace*, several Courts have applied that same analysis for Fourth Amendment claims based on events occurring 'between an unlawful arrest and the institution of legal process.' " *Nussbaumer v. Nesbitt*, 11-CV-6331, 2011 WL 4828844, at \*1 (W.D.N.Y. Oct. 7, 2011) (citing *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008); *see Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation."); *Johnson v. Dossey*, 515 F.3d 778, 781-82 (7th Cir. 2008) (distinguishing between claims that accrue when a litigant first appears before a magistrate, controlled by *Wallace*, and claims that arise during the legal process (controlled by *Heck*)); *Mallard v. Potenza*, 94-CV-0223, 2007 WL 4198246, at \*3 (E.D.N.Y. Nov. 21, 2007) (seeing no reason to distinguish between false arrest and search and seizure claims; "*Wallace* applies with equal force to a claim for an illegal search and seizure.")).

#### a. *Heck* Delayed Accrual Claims

I recommend that Plaintiff's claims for violation of his right to due process, violation of his right to equal protection, and malicious prosecution be dismissed without prejudice as premature pursuant to *Heck* because they seek to impugn the validity of his underlying state court criminal proceeding. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that the plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution" because a fabricated-evidence claim is most analogous to the tort of malicious prosecution, which also only accrues after the plaintiff prevailed in the underlying criminal proceeding); *Roberties v. Huff*, 11-CV-0521, 2012 WL 1113479, at \*4 (W.D.N.Y. Mar. 30, 2012) (dismissing as premature, pursuant to *Heck*, due process, conspiracy to prosecute, obstruction of justice, fabrication of evidence, and equal protection claims related to the plaintiff's conviction); *Nussbaumer*, 2011 WL 4828844, at \*1 (dismissing as premature, pursuant to *Heck*, due process, equal protection, malicious prosecution, and access to the courts claims related to the plaintiff's conviction); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at \*10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (where plaintiff's conviction had not been overturned or otherwise invalidated, his claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of his conviction—[were] barred.").

In the alternative, I recommend dismissal of Plaintiff's malicious prosecution claim for failure to state a claim.

**\*7**  To state a claim for malicious prosecution pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting the following four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions. *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)).

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 95 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

With regard to the second element, "it must be alleged that the prosecution is at an end, either by alleging that defendant was acquitted of the charge, or by alleging facts showing the legal termination of the prosecution complained of, in favor of defendant, prior to the commencement of the action." *Carpenter v. Nutter*, 127 Cal. 61, 63 (1899); *see also Wallace*, 549 U.S. at 392. "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996); *see also Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) ("A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended."). A reversal of a criminal conviction and remand for a new trial does not constitute such a termination. *DiBlasio*, 102 F.3d at 658 (citing *Russell v. Smith*, 68 F.3d 33, 36-37 (2d Cir. 1995)); *accord Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir. 2014) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)) ("[U]nder the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action.").

Plaintiff alleges that on September 19, 2017, Defendant Celie sentenced him to a term of three years incarceration, and two years post-release supervision. (Dkt. No. 1 at 10.) Thus, Plaintiff has not alleged that the criminal proceeding terminated in his favor. (*Id.*) It is not clear based on the allegations of the Complaint whether Plaintiff sought to appeal his criminal conviction. (Dkt. No. 1 at 9-10 [alleging that Plaintiff was "forced to sign the drug court agreement ... [and] that by signing the agreement ... [he] will not have the [ ]right[ ]s[ ] to appeal."].) However, Plaintiff has not alleged that his conviction has been overturned and finally disposed of, such that the charges cannot be brought against him again. As a result, I recommend that Plaintiff's malicious prosecution claim be dismissed without prejudice.

**b. Untimely Claims**

The statute of limitations for a § 1983 action accruing in New York is three years. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)); *see Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d

289, 292 (2d Cir. 2013) (per curiam) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)) (a claim for equal protection accrues "when the plaintiff knew or should have known of the disparate treatment.").

**\*8** Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at *3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)); *Syfert v. City of Rome*, 17-CV-0578, 2017 WL 3405521, at *8-10 (N.D.N.Y. Aug. 7, 2017) (Dancks, M.J.) (same); *Syfert v. City of Rome*, 15-CV-1149, 2015 WL 6819168, at *7-8 (N.D.N.Y. 2015) (Baxter, M.J.) (same).

**i. False Arrest**

As set forth above in Part V.C.1. of this Order and Report-Recommendation, the statute of limitations for a false arrest claim begins to accrue "when legal process was initiated." *Wallace*, 549 U.S. at 390. According to the Complaint, legal process was initiated against Plaintiff in June 2016. (Dkt. No. 1 at 7-8.) Thus, the statute of limitations for Plaintiff's false arrest claim expired three years later, in June 2019. Plaintiff commenced this action more than one year later, on August 28, 2020. [7] As a result, I recommend that Plaintiff's false arrest claims against Defendants Bieling, Mollica, and Young in their individual capacities be dismissed as time-barred. [8]

[7]     Plaintiff's Complaint was filed with the Clerk of the Court on September 17, 2020. (Dkt. No. 1.) However, pursuant to the prison mailbox rule, the Complaint is deemed to have been filed on the date that the Complaint was signed, which was August 28, 2020. *Mayandeunas v. Bigelow*, 18-CV-1161, 2019 WL 3955484, at *4 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.) (holding that "the prisoner's federal court complaint was signed (which, pursuant to the Prison Mailbox Rule, is the date of the filing of the prisoner's court action).").

2021 WL 1841470

8      After carefully reviewing the Complaint, the Court discerns no basis to invoke equitable tolling or equitable estoppel in order to salvage what are otherwise untimely claims.

In the alternative, I recommend dismissal of Plaintiff's false arrest claims against Defendants Bieling, Mollica, and Young in their individual capacities for failure to state a claim.

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curium)).

"Probable cause 'is a complete defense to an action for false arrest' brought under New York law or § 1983." *Kates*, 2017 WL 11548970, at *3 (citing *Weyant*, 101 F.3d at 852).

 *9  "For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (N.Y. 2016); *accord Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996). "A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause; therefore, it was privileged." *Johnson v. Pugh*, 11-CV-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013); *see also Marcavage v. City of New York*, 689 F.3d 98, 109-10 (2d Cir. 2012) ("Defendants prevail if there was probable cause to arrest Plaintiff[ ] for any single offense."); *Phelan v. Sullivan*, 541 F. App'x 21, 23-24 (2d Cir. 2013) ("A false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested.").

The Complaint alleges that Plaintiff's was convicted and sentenced for his underlying criminal charges. (Dkt. No. 1

at 10.) Thus, his arrest was grounded on probable cause and was privileged. As a result, I recommend that Plaintiff's false arrest claims against Defendants Bieling, Mollica, and Young in their individual capacities be dismissed for failure to state a claim.

**ii. Excessive Force**

"The statute of limitations applicable to federal claims of ... excessive force ... is three years." *B. v. City of New York*, 14-CV-1021, 14-CV-1924, 15-CV-0462, 15-CV-0463, 15-CV-0876, 15-CV-1146, 2016 WL 4530455, at *6 (E.D.N.Y. Aug. 29, 2016) (citing *Gilmore v. Goord*, 360 F. Supp. 2d 528, 530 (W.D.N.Y. 2005); *Shomo*, 579 F.3d at 181). "A claim for excessive force accrues when the use of force occurred." *Mitchell v. Kugler*, 07-CV-1801, 2009 WL 160798, at *6 (E.D.N.Y. Jan. 23, 2009).

Construing the Complaint liberally, as the Court must at this juncture, it alleges that Defendants Bieling and Mollica used excessive force while arresting Plaintiff on June 6, 2016. (Dkt. No. 1 at 6-7, 13; Dkt. No. 1, Attach. 1 at 1.) Thus, the statute of limitations for Plaintiff's excessive force claim expired on June 6, 2019. Plaintiff did not commence this action until August 28, 2020. 9 As a result, I recommend dismissal of Plaintiff's excessive force claims against Defendants Bieling, Mollica, and Young 10 in their individual capacities because those claims are untimely.

9      *See, supra*, note 7.

10      The Complaint does not contain any facts plausibly alleging that Defendant Young was involved in the use of force on June 6, 2016. (*See generally* Dkt. No. 1.) Instead, the Complaint alleges only that on June 2, 2016, Defendant Young "signed off on the police report without a search warrant produce[d] or without [Plaintiff] being read [his] Miranda rights or that [he] was under arrest until [he] arrived at the county jail." (Dkt. No. 1 at 7-8.) These allegations are insufficient to state a claim for excessive force against Defendant Young. As a result, in the alternative, to the extent that Plaintiff attempts to assert a use of force claim against Defendant Young, I recommend that such claim be dismissed for failure to state a claim.

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 97 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

### iii. Failure to Intervene

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "The statute of limitations for a claim based on failure to intervene accrues when the failure to intervene occurs." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018) (Suddaby, C.J.) (citing *Roundtree v. City of New York*, 15-CV-6582, 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018)); *accord Mercano v. City of New York*, 15-CV-3544, 2017 WL 1969676, at *3 (S.D.N.Y. May 12, 2017).

**\*10** Construing the Complaint liberally, as the Court must at this juncture, it alleges that, in the alternative to Plaintiff's excessive force claims against Defendants Bieling and Mollica, they failed to intervene to protect him on June 6, 2016. (Dkt. No. 1 at 6-7, 13; Dkt. No. 1, Attach. 1 at 1.) Thus, the statute of limitations for Plaintiff's failure to intervene claim expired on June 6, 2019. Plaintiff did not initiate this lawsuit until August 28, 2020.[11] As a result, I recommend dismissal of Plaintiff's failure to intervene claims against Defendants Bieling, Mollica, and Young[12] in their individual capacities because they are untimely.

[11]   *See, supra*, note 7.

[12]   To establish a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene. *Curley v. Vil. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); *Henry v. Dinelle*, 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.). As set forth in note 10 *supra*, the Complaint does not allege that Defendant Young was even present

for the use of force on June 6, 2016. Thus, the Complaint does not contain facts plausibly alleging that Defendant Young had a reasonable opportunity to intervene during the use of force on June 6, 2016. As a result, in the alternative, to the extent that Plaintiff attempts to assert a failure to intervene claim against Defendant Young, I recommend that such claim be dismissed for failure to state a claim.

### iv. Unlawful Search and Seizure

The statute of limitations for an unlawful search and seizure claim begins to run when the plaintiff is detained pursuant to legal process. *Hagans v. Nassau Cnty. Police Dep't*, 18-CV-1918, 2020 WL 1289529, at *5 (E.D.N.Y. Mar. 18, 2020) (citing *Mallard v. Potenza*, 94-CV-0223, 2007 WL 4198246, at *5 (E.D.N.Y. Nov. 21, 2007)).

Construing the Complaint liberally, as the Court must at this juncture, it alleges that Defendants Bieling and Mollica unlawfully seized and searched Plaintiff on June 6, 2016. (Dkt. No. 1 at 6-7, 13; Dkt. No. 1, Attach. 1 at 1.) Thus, the statute of limitations for Plaintiff's unlawful search and seizure claim expired on June 6, 2019. Plaintiff did not initiate this lawsuit until August 28, 2020.[13] As a result, I recommend dismissal of Plaintiff's excessive force claims against Defendants Bieling, Mollica, and Young[14] in their individual capacities because they are untimely.

[13]   *See, supra*, note 7.

[14]   Plaintiff appears to allege that Defendant Young was aware of the unlawful search and seizure when he signed off on the police report. (Dkt. No. 1 at 7-8.) However, it is unclear what police report Defendant Young would have been reviewing on June 2, 2016, which was four days before the alleged incident on June 6, 2016. (*See generally* Dkt. No. 1.) As a result, in the alternative, to the extent that Plaintiff attempts to assert an unlawful search and seizure claim against Defendant Young, I recommend that such claim be dismissed for failure to state a claim.

### 2. Official Capacity Claims

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 98 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)).

**\*11** Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). "[C]laims against a government employee in his official capacity are treated as a claim against the municipality," and, thus, cannot stand under the Eleventh Amendment. *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008).

As a result, I recommend that all claims against Defendants Bieling, Mollica, and Young in their official capacities be dismissed with prejudice and without leave to amend. *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.).

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v.*

*Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [15]

[15]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *rev'd on other grounds*, 682 F. App'x 30.

For the reasons stated in Section V.C.1.a., I recommend that Plaintiff's claims regarding due process, equal protection, and malicious prosecution "be dismissed without prejudice until and if the conviction is later overturned or vacated." *Kates v. Greece Police Dep't*, 16-CV-6544, 2017 WL 11548969, at *3 (W.D.N.Y. Nov. 13, 2017).

For the reasons stated in Section V.C.1.b., all of Plaintiff's claims that accrued before August 28, 2017, are barred by the statute of limitations. Nonetheless, a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Therefore, it is recommended that Plaintiff's time-barred claims be dismissed with leave to amend. This by no means suggests that Plaintiff's time-barred claims are meritorious, as it appears very unlikely that Plaintiff can state federal constitutional claims based upon any of the time-barred claims in his complaint.

**\*12** However, I recommend that Plaintiff's claims against Defendants Burnetti and Celie be dismissed with prejudice based on the doctrine of judicial immunity. *See Olszyk v. Thorne*, 20-CV-0445, 2020 WL 5634328, at *9 (N.D.N.Y. June 17, 2020) (Lovric, M.J.) (recommending dismissal with prejudice, claims against a judge overseeing the plaintiff's parole violation based on the doctrine of judicial immunity), *report and recommendation adopted by* 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020) (McAvoy, J.); *Wellington v. Foland*, 19-CV-0615, 2019 WL 3315181, at *11 (N.D.N.Y. July 24, 2019) (Lovric, M.J.) (recommending dismissal with prejudice and without leave to amend, claims against a village

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 99 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1841470

court judge based on the doctrine of absolute immunity), *report and recommendation adopted by*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019) (Suddaby, C.J.); *Brooks v. Ukieley*, 14-CV-6662, 2015 WL 235406, at *4 (E.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's claims in their entirety with prejudice against Judges Ukieley and Toomey based on the doctrine of judicial immunity); *Gonzalez v. Sharpe*, 06-CV-1023, 2006 WL 2591065, at *3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend, the plaintiff's claims against U.S. District Court Judge Gary L. Sharpe based on the doctrine of judicial immunity).

Moreover, I recommend that Plaintiff's claims against Defendants Nordon and Carden be dismissed with prejudice. *See Giles v. Fitzgerald*, 20-CV-0980, 2020 WL 6287459, at *10 (N.D.N.Y. Oct. 27, 2020) (Lovric, M.J.) (recommending dismissal with prejudice, claims pursuant to 42 U.S.C. § 1983, against the plaintiff's attorneys in his underlying criminal action); *Caldwell v. Barrier*, 19-CV-1516, 2020 WL 918717, at *3 (N.D.N.Y. Feb. 26, 2020) (Hummel, M.J.) (dismissing with prejudice, claims against the defendant private attorney, who represented the plaintiff in different case because the defendant was not liable under § 1983), *report and recommendation adopted by* 2020 WL 1904034 (N.D.N.Y. Apr. 17, 2020) (Sannes, J.).

In addition, I recommend that any claims against Defendants Bieling, Mollica, and Young in their official capacities be dismissed with prejudice. *See Giles*, 2020 WL 6287459, at *11 (recommending dismissal with prejudice, claims for monetary damages against the defendant police officers in their official capacities based on Eleventh Amendment immunity); *Wrobleski v. Miller*, 19-CV-0876, 2019 WL 6496723, at *9 (N.D.N.Y. Dec. 2, 2019) (Lovric, M.J.) (recommending dismissal with prejudice and without leave to amend, claims against officers in their official capacities pursuant to the doctrine of immunity pursuant to the Eleventh Amendment), *report and recommendation adopted in part and rejected in part on other grounds*, 2020 WL 219221 (N.D.N.Y. Jan. 15, 2020) (Sharpe, J.); *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend, claims against police officers in their official capacities based on the doctrine of immunity pursuant to the Eleventh Amendment), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.).

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides

that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*13  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 6) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 6) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it alleges claims for violation of his right to due process, violation of the equal protection clause, false arrest, excessive force, failure to intervene, unlawful search and seizure, and malicious prosecution against Defendants Bieling, Mollica, and Young in their individual capacities,

2021 WL 1841470

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a) for failure to state a claim upon which relief may be granted; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it alleges claims against (1) Defendant Burnettii, (2) Defendant Celie, (3) Defendant Nordon, (4) Defendant Carden, and (5) Defendants Bieling, Mollica, and Young in their official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim and because those claims seek relief from defendants who are immune from such relief; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[16]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1841470

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01454-GTS-TWD    Document 9    Filed 02/14/24    Page 101 of 105

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1840591

2021 WL 1840591
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Marsheem JOHNSON, Plaintiff,

v.

D. BIELING, Onondaga County Sheriff's Officer;
S. Mollica, Onondaga County Sheriff's Officer;
J.M. Young, Sgt.; August Nordon, Public Defender;
Burnettii, Onondaga County Supreme Court Judge;
Celie, Onondaga County Drug Court Judge; and
Clifton Cardan, Public Defender, Defendants.

5:20-CV-1124 (GTS/ML)
|
Signed 05/07/2021

**Attorneys and Law Firms**

MARSHEEM JOHNSON, 17-B-2753, Plaintiff, Pro Se, Collins Correctional Facility, P.O. Box 340, Collins, New York 14034.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Marsheem Johnson ("Plaintiff") against the seven above-captioned individuals ("Defendants"), is United States Magistrate Judge Miroslav Lovric's Report-Recommendation recommending that certain of Plaintiff's claims be dismissed with prejudice and that the remainder of those claims be dismissed without prejudice and with leave to replead. (Dkt. No. 8.) Plaintiff has not filed an objection to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Lovric's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation.[1] Magistrate Judge Lovric has employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein.[2]

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

[2]    The Court notes that on page 19 of the Report-Recommendation, in the last sentence of Part V.A.1.b.iv., the term "excessive force claims" is used instead of the term "unlawful search and seizure claims." (Dkt. No. 8, at 19.) The Court construes that usage as a mere typographical error, given the fact that the section regards Plaintiff's unlawful search and seizure claims (and the fact that the Report-Recommendation previously analyzed Plaintiff's excessive force claims).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 8) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims asserted in Plaintiff's Complaint (Dkt. No. 1) are **DISMISSED with prejudice and without leave to replead**:

(1) Plaintiff's claims against Defendant Burnettii;

(2) Plaintiff's claims against Defendant Celie;

(3) Plaintiff's claims against Defendant Nordon;

(4) Plaintiff's claims against Defendant Cardan; and

(5) Plaintiff's claims against Defendants Bieling, Mollica and Young in theoirf icial capacities; and it is further

**ORDERED** that the remaining claims asserted in Plaintiff's Complaint (Dkt. No. 1)–i.e., Plaintiff's claims against Defendants Bieling, Mollica and Young in their individual capacities for violation of the Due Process Clause, violation

Johnson v. Bieling, Not Reported in Fed. Supp. (2021)

2021 WL 1840591

of the Equal Protection Clause, false arrest, excessive force, failure to intervene, unlawful search and seizure, and malicious prosecution–**shall be <u>DISMISSED</u> with prejudice** and without further Order of this Court **UNLESS, within THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **Amended Complaint** that cures the pleading defects identified in the Report-Recommendation; and it is further

**\*2  ORDERED** that, should Plaintiff file a timely Amended Complaint, it shall be referred to Magistrate Judge Lovric for his review.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1840591

---

**End of Document**© 2024 Thomson Reuters. No claim to original U.S. Government Works.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 967059
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Barton DePAUL, Plaintiff,

v.

James HELMER, Defendant.

No. 6:10–CV–00813 (LEK–ATB).
|
March 21, 2012.

**Attorneys and Law Firms**

Barton Depaul, Beacon, NY, pro se.

David H. Walsh, IV, Barth, Sullivan Law Firm, Syracuse, NY, for Defendant.

***MEMORANDUM–DECISION and ORDER***

LAWRENCE E. KAHN, District Judge.

**I. INTRODUCTION**

*1 Plaintiff Barton DePaul ("Plaintiff" or "DePaul"), proceeding *pro se* and *in forma pauperis,* commenced this § 1983 civil rights action by filing a Complaint on July 6, 2010. Dkt. No. 1 ("Complaint"). Plaintiff then filed an Amended Complaint on July 28, 2010. Dkt. No. 8 ("Amended Complaint"). Defendant James Helmer, an investigator with the Oneida County District Attorney's Office ("Defendant" or "Investigator Helmer") filed an Answer to the Complaint on August 9, 2010. Dkt. No. 12 ("Answer"). On April 6, 2011, United States Magistrate Judge Andrew T. Baxter ordered Defendant to file an answer or otherwise respond to Plaintiff's Amended Complaint by April 30, 2011. Dkt. No. 31. Presently before the Court is Defendant's Motion to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6). [1] Dkt. No. 35–1 ("Motion"). Plaintiff filed a Response in opposition to Defendant's Motion, and Defendant filed a Reply. Dkt. Nos. 42 ("Response"), 43 ("Reply").

[1]    The Court notes that Plaintiff's Amended Complaint was filed before Defendant filed his Answer to Plaintiff's initial Complaint, and well before Defendant filed the present Motion. Absent leave of the Court, Defendant's Motion would

have been well beyond the time limits for responsive pleadings prescribed by Fed.R.Civ.P. 12(a). However, this time limit may be extended by Court order, *see* Fed.R.Civ.P. 6(b), and Magistrate Judge Baxter directed Defendant to respond by Order filed April 6, 2011. Dkt. No. 31. In any event, because Plaintiff is proceeding *in forma pauperis,* 28 U.S.C. § 1915(e)(2)(B) directs the Court to "dismiss the case at any time if the court determines that the action ... fails to state a claim on which relief may be granted."

**II. BACKGROUND**

Plaintiff claims that on May 19, 2010, Investigator Helmer ordered his arrest "on charges of no merit." Am. Compl. at 4. Plaintiff alleges that he had been "helping [Investigator] Helmer on a cold murder case." *Id.* at 5. Plaintiff appears to claim that Helmer "falsely accused" Plaintiff of pulling a "B–B gun" on him, and "lied to get [him] indicted." Dkt. No. 8–1 ("Am.Compl.Ex.1") at 1. Plaintiff also alleges that his Fourteenth Amendment rights were violated by Investigator Helmer "because he lied on court minutes trying to bury me in prison." Am. Compl. at 5. Plaintiff also alleges that Investigator Helmer released information about Plaintiff's cooperation with the District Attorney's Office to the media, thereby "label[ing him] as a rat informant ... and now fighting to get [him] killed." *Id.* Plaintiff alleges that this led to a fight with another inmate, resulting in injuries to Plaintiff. *Id.*

Plaintiff submitted the Oneida County grand jury indictment that arose out of the "B–B gun" incident, in which Plaintiff was charged with third degree criminal possession of a weapon, second degree menacing, and second degree aggravated harassment. *Id.* at 7; Am. Compl. Ex. 1 at 5. The indictment states that Plaintiff "pointed what appeared to be a pistol or other firearm at Oneida County District Attorney's Chief Investigator James Helmer and stated, 'Give me all your money, you [expletive].' " Am. Compl. at 7. However, Plaintiff claims that he "was just bustin chops. After [eighteen] months of James Helmer doing it to me I thought I could do it to James." Am. Compl. Ex. 1 at 1.

The Court takes judicial notice of Plaintiff's conviction arising out of this arrest and indictment, as well as his continued incarceration at Fishkill Correctional Facility. [2] *See Wingate v. Gives,* No. 05 Civ. 1872, 2008 WL 5649089, at *3 n. 7 (S.D.N.Y. Apr.13, 2008) (taking judicial notice of conviction); *Williams v. City of New York,* No. 07 Civ. 3764,

2008 WL 3247813, at *2 (S.D.N.Y. Aug.7, 2008) (taking judicial notice of continued incarceration).

2    This information was obtained on March 19, 2012 via the New York State Department of Corrections and Community Supervision Inmate Population Information Search page, located at http://nysdoccslookup.doccs.ny.gov/.

## III. STANDARD OF REVIEW

**\*2** In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party. *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1249. Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Finally, the Court is mindful of the principle that a *pro se* litigant's papers are to be construed liberally. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citations omitted). Accordingly, the Court must interpret Plaintiff's submissions to "raise the strongest arguments that they suggest." *Dias v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (internal quotation and citation omitted). At the same time, the Court is "not obliged to reconcile [a *pro se*] plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Koulkina v. City of New York,* 559 F.Supp.2d 300, 314 (S.D.N.Y.2008) (quotation and citations omitted). Where such a contradiction exists, the *pro se* plaintiff's allegations "are insufficient to defeat a motion to dismiss." *Id.*

## IV. DISCUSSION

Reading Plaintiff's Amended Complaint liberally, Plaintiff appears to assert § 1983 causes of action for: (1) false arrest; (2) denial of the right to a fair trial; and (3) conspiracy. The Court addresses each of these claims in turn.

### A. False Arrest

Plaintiff claims that Defendant ordered his arrest "on charges of no merit." Am. Compl. at 4. "To state a claim under § 1983 for false arrest, the plaintiff must show a violation of his Fourth Amendment right to remain free from unreasonable seizures, 'which includes the right to remain free from arrest absent probable cause.' " *Barmapov v. Barry,* No. 09–CV–3390, 2011 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) (quoting *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006)). "The existence of probable cause to arrest ... 'is a complete defense to an action for false arrest.' " *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *see also Cameron v. Wise,* No. 09 Civ. 967, 2011 WL 1496341, at *5 (S.D.N.Y. Apr. 20, 2011). "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir.1986). Because Plaintiff was subsequently convicted, there was probable cause for his arrest and his claim for false arrest is insufficient as a matter of law.

### B. Right to a Fair Trial

**\*3** Plaintiff's claim that Defendant lied in court to secure his conviction—thereby violating his Fourteenth Amendment right to a fair trial—is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "if a judgment in favor of the plaintiff [in a § 1983 suit] would necessarily imply the invalidity of his conviction or sentence[,] the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Here, Plaintiff's claim that Defendant's testimony was perjured would clearly implicate the validity of his conviction. *See, e.g., Perez v. Cuomo,* No. 09–CV–1109, 2009 WL 1046137, at *7 (E.D.N.Y. Apr.17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.") (citations and quotations omitted). As Plaintiff

2012 WL 967059

has not demonstrated that his conviction has already been invalidated, and as the Court's inquiry confirms that he is still incarcerated on these charges, Plaintiff's fair trial claim is dismissed pursuant to *Heck.* [3]

[3]    Such dismissal is without prejudice, as "the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999) (citing *Heck,* 512 U.S. at 487).

### C. Conspiracy

Plaintiff alleges that Investigator Helmer disclosed to the media that Plaintiff was acting as an informant for the District Attorney's Office, and that Plaintiff was attacked by another inmate as a result. Reading the Amended Complaint liberally, Plaintiff appears to assert that Investigator Helmer conspired with a private actor to cause him harm. To state a claim of conspiracy pursuant to § 1983, a plaintiff must sufficiently allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that and causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Here, Plaintiff fails to state a plausible claim for relief. Beyond mere conclusory statements, he pleads no facts that support even an inference that Defendant was working in concert to cause harm to Plaintiff. [4] Accordingly, this claim is dismissed for failure to state a claim upon which relief may be granted.

[4]    The Court notes that Plaintiff brought a similar claim against a different defendant in another civil action in this District. *See DePaul v. McNamara,* No. 6:10–CV–1123, Dkt. No. 1 (N.D.N.Y. filed Sept. 20, 2010). There, he claimed that District Attorney Scott McNamara had conspired with Investigator Helmer "for Plaintiff's murder by wrongfully disclosing that

Plaintiff 'worked for' the District Attorney's Office apparently as an informant." *Id.,* Dkt. No. 7 (report-recommendation). This claim was found to be implausible, and dismissed for failure to state a claim upon which relief may be granted. *Id.,* Dkt. No. 8 (adopting report-recommendation).

The Court notes that a *pro se* action should generally not be dismissed without "granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugo,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. *Id.* Further, leave may be denied where a plaintiff has already amended his or her complaint once. *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002). Here, Plaintiff has already submitted one Amended Complaint, and the flaws in that Amended Complaint are substantive in nature such that better pleading would not cure them. As a result, it would be futile to afford Plaintiff an additional opportunity to amend his pleading.

### V. CONCLUSION

**\*4** Accordingly, it is hereby:

**ORDERED,** that Defendant's Motion (Dkt. No. 35) to dismiss Plaintiff's Amended Complaint is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Amended Complaint (Dkt. No. 8) is **DISMISSED** without prejudice; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2012 WL 967059

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.